[Cite as *State ex rel. Sagallah v. Born*, 2014-Ohio-3106.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State  ex rel.] Eihab Sagallah, | : | |
| Relator, | : | |
| v. | : | No.  13AP-787 |
| John Born, Director of The Ohio Department of Public Safety, and | : | (REGULAR CALENDAR) |
| Mike Rankin, Registrar, Bureau of Motor Vehicles, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on July 15, 2014

*Muchnicki & Bittner, LLP, E. Dennis Muchnicki* and *Amy M. Bittner,* for relator.

*Michael DeWine*, Attorney General, *Hilary R. Damaser* and *Angela M. Sullivan,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Eihab Sagallah, commenced this original action requesting this court issue a writ of mandamus ordering respondents John Born, director of the Ohio Department of Public Safety, and Mike Rankin, registrar of the Bureau of Motor Vehicles ("BMV"), to renew relator's Ohio driver's license without requiring him to submit additional documentation concerning his immigration status in the United States.

**I. Facts and Procedural History**

{¶ 2}   Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, including findings of fact and conclusions of law.

{¶ 3}   As the magistrate's decision sets out more fully, relator applied for a driver's license in August 2013, presenting along with his application his then-current driver's license that was about to expire, his Social Security card, and a court order from an immigration judge with the United States Department of Justice, Executive Office for Immigration Review dated May 21, 1998 granting relator asylum in the United States. Although relator had successfully obtained an Ohio driver's license seven times since 1997, the deputy registrar of the BMV denied relator's August 2013 application for relator's failure to comply with Ohio Adm.Code 4501:1-1-21(G). More specifically, the deputy registrar determined relator's court order signed by the immigration judge was not an acceptable form of documentation provided in the rule as proof of relator's legal presence in the United States.

{¶ 4}   On September 12, 2013, relator filed this mandamus action asking the court to compel the BMV to issue him a new driver's license without any additional documentation of his asylum status. Pursuant to a joint motion of the parties, this court issued an order to the BMV to grant relator a six-month nonrenewable driver's license while the parties proceeded with the mandamus action. Respondents filed a motion to dismiss, and both respondents and relator filed motions for summary judgment.

{¶ 5}   In her decision, the magistrate determined relator's motion for summary judgment should be denied, respondents' motion for summary judgment should be granted, and this court should deny relator's request for a writ of mandamus. In reaching her conclusions, the magistrate determined that Ohio's rules and regulations pertaining to the application for a driver's license do not conflict with federal law, and relator was unable to demonstrate a clear legal duty on the part of respondents to accept the documentation relator provided and issue relator a new driver's license. The magistrate's decision did not address whether relator had an adequate remedy in the ordinary course of the law.

## II. Objections

{¶ 6} Relator filed three objections to the magistrate's decision:

I. The magistrate's finding of fact number eight is clearly erroneous because it is based upon inadmissible hearsay and is contrary to the admissible evidence in the record.

II. The magistrate erred when she failed to address the respondents' lack of statutory authority to base decisions concerning Ohio residence upon immigration status.

III. The magistrate erred when she failed to address the respondents' lack of statutory authority to discriminate against Ohio residents who have been granted legal status by immigration judges pursuant to the system for granting asylum created by the Immigration and Nationality Act.

## III. Analysis

{¶ 7} In order to be entitled to a writ of mandamus, relator must establish: (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the governmental actor requested to perform the acts, and (3) lack of an adequate remedy in the ordinary course of the law. *State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas*, 106 Ohio St.3d 151, 2005-Ohio-4103, ¶ 13, citing *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, ¶ 13.

{¶ 8} The registrar of the BMV has adopted various rules to aide in the granting of driver's licenses to Ohio residents. Ohio Adm.Code 4501:1-1-35 states, in pertinent part, that "[f]or the purposes of this rule, 'resident' of Ohio means a person who is a native-born or naturalized citizen of the United States or a person who presents credible evidence from the United States citizen and immigration services (USCIS) that the person is a permanent resident of the United States." Ohio Adm.Code 4501:1-1-35(C). The rule further provides that "[p]roof of Ohio residence must be shown in accordance with the acceptable documentation set forth in this chapter." Ohio Adm.Code 4501:1-1-35(F).

{¶ 9} When relator applied to renew his driver's license, the deputy registrar denied the application for failure to comply with Ohio Adm.Code 4501:1-1-21(G), the administrative rule listing the acceptable forms of identification that must be submitted along with an application for a driver's license. That rule states in pertinent part that, in

order to establish the applicant's legal presence in the United States, the applicant shall provide with his or her application:

> Appropriate United States citizenship and immigration services (USCIS) documents which are original and valid, or like documents issued by the successor agency to the USCIS showing the dates of legal presence. The registrar may require that any documentation presented be verifiable through the verification lawful status (VLS) or systematic alien verification entitlement (SAVE) databases maintained by the federal government.

Ohio Adm.Code 4501:1-1-21(G)(5). Relator did not present any documentation from USCIS with his application. Instead, relator attempted to use documentation from the United States Department of Justice, Executive Office for Immigration Review, showing relator had been granted asylum status in the United States in 1998.

{¶ 10} According to relator, these administrative code provisions go beyond the grant of authority from the General Assembly to the registrar of the BMV to "[a]dopt such forms and rules as are necessary to carry out all laws the registrar is required to administer," and they are therefore void and unenforceable. R.C. 4501.02(A)(1). Additionally, relator argues these code provisions are an unconstitutional usurpation of a federal power because "[t]he authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government." *Truax v. Raich*, 239 U.S. 33, 42 (1915).

{¶ 11} Because mandamus is an extraordinary writ, it is unavailable when a declaratory judgment would achieve the same result. *State ex rel. Cordray v. Court of Claims of Ohio*, 190 Ohio App.3d 161, 2010-Ohio-4437, ¶ 16 (10th Dist.). Thus, " ' "if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." ' " *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, ¶ 17, quoting *State ex rel. Obojski v. Perciak*, 113 Ohio St.3d 486, 2007-Ohio-2453, ¶ 13, quoting *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634 (1999). Pursuant to R.C. 2721.03, "any person whose rights, status, or other legal relations are affected by a * * * statute [or] rule as defined in [R.C. 119.01] * * * may have determined any question of construction or

validity arising under the * * * statute [Or] rule * * * and obtain a declaration of rights, status, or other legal relations under it."

{¶ 12} Paragraph 19 of relator's complaint for a writ of mandamus states:

> *Chapter 4507* of the Revised Code does not grant [r]espondents any basis to either instruct or allow their employees to even inquire of an Ohio resident, much less base their decision of entitlement to renew a license, upon the immigration status of the Ohio resident.  All provisions of [r]espondents' regulations which attempt to assert such authority over immigration issues are *ultra vires*, unlawful and beyond the express grant of authority given to [r]espondents in the Revised Code, specifically including but not limited to Revised Code Chapter 4507.

(Emphasis sic.)  While relator's complaint is couched in terms of compelling respondents' clear legal duty to issue relator a driver's license, the above-quoted language makes it clear that relator's request, in essence, is for relief in the form of (1) a declaratory judgment declaring that Ohio Adm.Code 4501:1-1-21(G) and 4501:1-1-35(C) are invalid as an unauthorized exercise of legislative authority by an administrative agency and/or an unconstitutional usurpation of a federal power, and (2) a prohibitory injunction preventing respondents from applying the provisions of Ohio Adm.Code 4501:1-1-21(G) and 4501:1-1-35(C) as a justification for denying relator's application for a driver's license.

{¶ 13} Though neither party nor the magistrate raised this issue, "[i]t is axiomatic that 'if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.' " *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶ 41 ("*UAAAIW*"), quoting *Grendell* at 634.

{¶ 14} Relator suggests a declaratory judgment and a prohibitory injunction would not be sufficiently speedy to afford complete relief because relator is in jeopardy of losing his job if he is unable to maintain his driver's license.  In *State ex rel. Ohio Apt. Assn. v. Wilkins*, 10th Dist. No. 06AP-198, 2006-Ohio-6783, this court explained the "narrow exceptions" to the general jurisdictional rule regarding mandamus actions.  We explained that the Supreme Court of Ohio has determined it is a "general rule" that appellate courts

lack jurisdiction to consider the merits of mandamus actions when those actions "constitute disguised actions for declaratory judgment and prohibitory injunction." *Id.* at ¶ 6, citing *UAAAIW* at ¶ 43. However, the Supreme Court has recognized certain limited situations in which a mandamus challenge to the constitutionality of a statute "might be appropriate where a declaratory judgment and a prohibitory injunction would not be sufficiently speedy to afford relief-as in an expedited election case." *Id.* at ¶ 7, citing *UAAAIW* at ¶ 44, citing *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 88 Ohio St.3d 239 (2000). We noted, however, that courts should "interpret and apply the exceptions to the general rule narrowly." *Id.*, citing *UAAAIW*. As we explained in *Ohio Apt. Assn.*, "the Supreme Court of Ohio has taken a significantly more narrow view of when an appellate court's mandamus jurisdiction may be invoked," and "[t]his more narrow view of original jurisdiction has been emphasized particularly where the relator's allegations indicate that the real goals of the mandamus action are declaratory judgment and a prohibitory injunction." *Id.* at ¶ 10, citing *UAAAIW* at ¶ 41; *Grendell* at 634-35; *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, ¶ 20-22. As we noted above, that is precisely the relief that relator seeks here.

{¶ 15} Though relator argues he may lose his job without a driver's license, his argument does not fall within the narrow exception to the general jurisdictional rule. Unlike an expedited election case with an immovable deadline, relator could seek, as he did in this case, an order granting him a temporary driver's license during the pendency of his declaratory judgment action to mitigate any perceived harm he may suffer from pursuing a declaratory judgment rather than mandamus. Therefore, we conclude relator's allegations are not sufficient to bring this case within the recognized narrow exceptions to the general rule expressed in *UAAAIW*. Accordingly, we find our original jurisdiction in mandamus has not been properly invoked, and we overrule relator's objections. *Ohio Apt. Assn.* at ¶ 11.

## IV. Conclusion

{¶ 16} Following an independent review of this matter, we find the magistrate has properly determined the facts and we adopt the findings of fact as our own. However, we reject the magistrate's conclusions of law. Because we find that relator had an adequate

remedy at law, we dismiss relator's petition for a writ of mandamus for lack of jurisdiction.

*Objections overruled; action dismissed.*

KLATT and DORRIAN, JJ., concur.

————————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Eihab Sagallah, | : | |
| Relator, | : | |
| v. | : | No. 13AP-787 |
| John Born, Director of The Ohio | : | (REGULAR CALENDAR) |
| Department of Public Safety, and | | |
| Mike Rankin, Registrar, | : | |
| Bureau of Motor Vehicles, | | |
| | : | |
| Respondents. | | |
| | : | |

---

## MAGISTRATE'S DECISION

### Rendered on April 16, 2014

---

*Muchnicki & Bittner, LLP, E. Dennis Muchnicki* and *Amy M. Bittner,* for relator.

*Michael DeWine*, Attorney General, *Hilary R. Damaser* and *Angela M. Sullivan,* for respondents.

---

### MANDAMUS
### ON MOTIONS FOR SUMMARY JUDGMENT

{¶ 17} Relator, Eihab Sagallah, has filed this original action requesting that this court issue a writ of mandamus ordering respondents John Born, as director of the Ohio Department of Public Safety and Mike Rankin, as registrar of the Bureau of Motor Vehicles, to renew his Ohio driver's license without requiring him to submit any additional information concerning the status of his presence in the United States.

Findings of Fact:

{¶ 18} 1. Relator entered the United States in 1996 and, on May 21, 1998, a Judge with the U.S. Department of Justice, Executive Office for Immigration Review, Office of the Immigration Judge granted relator's applications for withholding of deportation and for asylum and ordered that he be released without bond.

{¶ 19} 2. According to his complaint, relator received his first driver's license from the Ohio Bureau of Motor Vehicles ("BMV") in 1997 and has renewed his license six times since then.

{¶ 20} 3. Relator's current Ohio driver's license was scheduled to expire on September 1, 2013.

{¶ 21} 4. When relator applied for his new driver's license in August 2013, he presented his driver's license that was scheduled to expire, his social security card, and the May 21, 1998 order which granted him asylum as proof of his legal presence in the United States.

{¶ 22} 5. The deputy registrar denied his application to renew his driver's license and required that he comply with Ohio Adm.Code 4501:1-1-21(G), which provides that the following documents are acceptable to establish an applicant's legal presence in the United States: a birth certificate, a United States passport, a United States passport card, a naturalization document issued by the United States, or an appropriate document from the United States Citizenship and Immigration Services ("USCIS") showing the dates of his legal presence. The code provides further that the registrar may require that any documentation presented be verifiable through the Verification Lawful Status ("VLS") or Systematic Alien Verification Entitlement ("SAVE") databases maintained by the Federal government.

{¶ 23} 6. According to the affidavit of Angela Y. Dickens, a customer service manager in the Ohio Department of Public Safety, the BMV relies on USCIS documentation and the following are examples of acceptable USCIS documentation:

> I-94 (arrival/departure) cards, I-766 (employee authorization) cards, and I-20 (certificate of eligibility for non-immigrant student) forms.

{¶ 24} 7. In her affidavit, Dickens explained why the BMV requires documentation from USCIS:

First, USCIS documents almost always contain beginning and end dates for an individual's legal presence in the United States, thereby allowing BMV and deputy registrars to comply with the law. Under Ohio law, a non-renewable license expires on the same date listed on a person's legal presence documentation or four years from the date of issuance, whichever date comes first. Because USCIS documents almost always contain an end date, the BMV and deputy registrars can use those documents with end dates as proof of legal presence when determining the date upon which a non-renewable license will expire.

Second, for legal presence documents that do not contain end dates, USCIS has a system — the systematic alien verification entitlement (SAVE) database — that BMV and deputy registrars can use to verify an individual's legal presence. USCIS is a recognized authority with respect to immigration matters. USCIS is the federal agency directly responsible for overseeing immigration in the United States and enforcing the requirements of federal immigration law. The USCIS tracks and records the legal presence of all foreign nationals in its database.

{¶ 25} 8. Dickens also explained that, through personal inquiries, the "United States Department of Justice (or 'USDOJ') confirmed that the USDOJ does not maintain its own database for checking the legal presence status of foreign nationals. For these reasons, BMV considers the USCIS to have a more accurate method than the USDOJ for verifying legal presence."

{¶ 26} 9. On September 12, 2013, relator filed this mandamus action asking this court to compel the BMV to issue him a new driver's license without requiring him to provide additional documentation.

{¶ 27} 10. Because relator's driver's license was about to expire and because relator indicated that he needed his driver's license to maintain his employment, the magistrate conducted a telephone conference in order to find a temporary solution.

{¶ 28} 11. As a result, the parties filed a joint motion and this court issued an order which provided that the BMV would issue relator a six month nonrenewable driver's license and that the issuance of that license would not prejudice any of the parties' arguments or assertions on the merits of the claims.

{¶ 29} 12. Respondents filed a motion to dismiss and a motion for summary judgment.

{¶ 30} 13. Relator has also filed a motion for summary judgment.

{¶ 31} 14. The parties have responded to each other's motions.

{¶ 32} 15. The matter is currently before the magistrate on the parties' motions for summary judgment.

Conclusions of Law:

{¶ 33} For the reasons that follow, the magistrate finds that relator cannot establish a clear legal right to a writ of mandamus compelling respondents to issue him a new driver's license without requiring him to provide additional documentation. As such, it is this magistrate's decision that this court should deny relator's motion for summary judgment and grant respondents' motion for summary judgment.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280 (1996). Accordingly, any party moving for summary judgment must satisfy a three-prong inquiry showing: (1) that there is no genuine issue as to any material facts; (2) that the parties are entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 36} Before the Intelligence Reform and Terrorism Prevention Act ("IRTPA") of 2004 was passed, standards concerning the issuance of a driver's license and personal identification cards were determined on a state-by-state basis. There were no national standards in place. Before September 11, 2001, any legislative action concerning the setting of national standards for state-issued identification documents had been

extremely controversial. However, after the events of September 11, 2001, opinions changed. In 2004, Congress enacted IRTPA. Pursuant to this Act, the Secretary of Transportation, in consultation with the Secretary of Homeland Security, was given authority to issue regulations with respect to minimum standards for Federal Acceptance of a driver's license and personal identification cards.

{¶ 37} A portion of the IRTPA is entitled the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005), pertinent provisions codified at 49 U.S.C. 30301 ("REAL ID Act") is to establish minimum standards for the issuance of a driver's license which will be recognized by federal agencies for official purposes. Section 201(3) defines "official purpose" to include, but is not limited to, "accessing Federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary shall determine." Section 202(c) establishes minimum document requirements and issuance standards for federal recognition. Section 202(c)(2)(B) requires that states verify an applicant's legal status in the United States before a driver's license or personal identification card can be issued.

{¶ 38} Specifically, to meet the federally mandated requirements, Section 202 provides, in relevant part:

> **MINIMUM DOCUMENT REQUIREMENTS AND ISSUANCE STANDARDS FOR FEDERAL RECOGNITION.**
>
> (a) MINIMUM STANDARDS FOR FEDERAL USE.—
>
> (1) IN GENERAL.—Beginning 3 years after the date of the enactment of this division, a Federal agency may not accept, for any official purpose, a driver's license or identification card issued by a State to any person unless the State is meeting the requirements of this section.
>
> * * *
>
> (c) MINIMUM ISSUANCE STANDARDS.—
>
> (1) IN GENERAL.—To meet the requirements of this section, a <u>State shall require, at a minimum, presentation and verification of the following information</u> before issuing a driver's license or identification card to a person:

(A) A photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth.

(B) Documentation showing the person's date of birth.

(C) Proof of the person's social security account number or verification that the person is not eligible for a social security account number.

(D) Documentation showing the person's name and address of principal residence.

(2) SPECIAL REQUIREMENTS.—

(A) IN GENERAL.—To meet the requirements of this section, a State shall comply with the minimum standards of this paragraph.

(B) EVIDENCE OF LAWFUL STATUS.—<u>A State shall require</u>, before issuing a driver's license or identification card to a person, <u>valid documentary evidence</u> that the person—

(i) is a citizen or national of the United States;

(ii) is an alien lawfully admitted for permanent or temporary residence in the United States;

(iii) has conditional permanent resident status in the United States;

(iv) has an approved application for asylum in the United States or has entered into the United States in refugee status;

(v) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States;

(vi) has a pending application for asylum in the United States;

(vii) has a pending or approved application for temporary protected status in the United States;

(viii) has approved deferred action status; or

(ix) has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in

the United States or conditional permanent resident status in the United States.

(C) TEMPORARY DRIVERS' LICENSES AND IDENTIFICATION CARDS.—

(i) IN GENERAL.—If a person presents evidence under any of clauses (v) through (ix) of subparagraph (B), the State may only issue a temporary driver's license or temporary identification card to the person.

(ii) EXPIRATION DATE.—A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall be valid only during the period of time of the applicant's authorized stay in the United States or, if there is no definite end to the period of authorized stay, a period of one year.

* * *

(3) VERIFICATION OF DOCUMENTS.—To meet the requirements of this section, a State shall implement the following procedures:

(A) Before issuing a driver's license or identification card to a person, the State shall verify, with the issuing agency, the issuance, validity, and completeness of each document required to be presented by the person under paragraph (1) or (2).

* * *

(C) Not later than September 11, 2005, the State shall enter into a memorandum of understanding with the Secretary of Homeland Security to routinely utilize the automated system known as Systematic Alien Verification for Entitlements, as provided for by section 404 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (110 Stat. 3009-664), to verify the legal presence status of a person, other than a United States citizen, applying for a driver's license or identification card.

(d) OTHER REQUIREMENTS.—To meet the requirements of this section, a State shall adopt the following practices in the issuance of drivers' licenses and identification cards:

* * *

(3) Subject each person applying for a driver's license or identification card to mandatory facial image capture.

(4) <u>Establish an effective procedure to confirm or verify a renewing applicant's information</u>.

* * *

(10) Limit the period of validity of all driver's licenses and identification cards that are not temporary to a period that does not exceed 8 years.

(11) In any case in which the State issues a driver's license or identification card that does not satisfy the requirements of this section, ensure that such license or identification card—

(A) clearly states on its face that it may not be accepted by any Federal agency for federal identification or any other official purpose; and

(B) uses a unique design or color indicator to alert Federal agency and other law enforcement personnel that it may not be accepted for any such purpose.

(Emphasis added.)

{¶ 39} As above indicated, with the REAL ID Act, Congress set out to establish certain minimum standards for the issuance of a driver's license and directed the states to comply. While Congress established these minimum standards, Congress left it to the states to implement the law. In other words, Congress did not completely usurp the authority the states have always had concerning the issuance of a driver's license.

{¶ 40} As relevant here, the REAL ID Act requires states verify an applicant's lawful status in the United States. States must require an applicant to submit "valid documentary evidence" of their lawful status; however, "valid documentary evidence" is not defined and, pursuant to Section 202(d)(4), states are required to adopt practices to "[e]stablish an effective procedure to confirm or verify a renewing applicant's information." The federal government did not tell the states how to apply the Act. Instead, the Act established minimum standards and left the manner of implementation to the states.

{¶ 41} Relator asserts that, in the REAL ID Act, Congress "created a system for the classification of immigrants for the purposes of programs for the issuance of driver's licenses to immigrants by the States * * * and the information that [he] submitted in support of his application for a driver's license, * * * provides all of this information." (Relator's answer to respondents' motion to dismiss and cross motion for summary judgment, 6.)  Relator points to section 202(c)(2)(B) which provides:

> (B) EVIDENCE OF LAWFUL STATUS.—<u>A State shall require</u>, before issuing a driver's license or identification card to a person, <u>valid documentary evidence</u> that the person—
>
> (i) is a citizen or national of the United States;
>
> (ii) is an alien lawfully admitted for permanent or temporary residence in the United States;
>
> (iii) has conditional permanent resident status in the United States;
>
> (iv) <u>has an approved application for asylum</u> in the United States or has entered into the United States in refugee status;
>
> (v) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States;
>
> (vi) has a pending application for asylum in the United States;
> (vii) has a pending or approved application for temporary protected status in the United States;
>
> (viii) has approved deferred action status; or
>
> (ix) has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States.

(Emphasis added.)

{¶ 42} According to relator, pursuant to (iv) above, "there is no question that [his] grant of asylum by the Attorney General in 1998 entitles him to the issuance of a driver's license."  (Relator's answer, 7.)

{¶ 43} The magistrate disagrees. First, Section 202(2)(B) also provides that "[a] State shall require, * * * <u>valid documentary evidence</u>." (Emphasis added.) Second, Section 202(d)(4) requires states to "[e]<u>stablish an effective procedure to confirm or verify a renewing applicant's information</u>." (Emphasis added.) The Act does not dictate these procedures and, as noted previously, left those procedures for the states to decide. Ohio can determine what constitutes "valid documentary evidence" that relator has "an approved application for asylum" to establish relator's legal status.

{¶ 44} In her affidavit, Angela Dickens explained that the BMV and deputy registrars rely on documentation from USCIS because those documents usually contain a beginning and end date for an individual's legal presence in the United States and the USCIS utilizes the SAVE database to verify an individual's legal presence. Ohio does not consider relator's 1998 order to be "valid documentary evidence" of his "lawful status" and nothing in the REAL ID Act requires that Ohio's BMV is required to accept that order as "valid documentary evidence" of relator's "legal status."

{¶ 45} In an effort to comply with the REAL ID Act, the Ohio legislation amended R.C. Chapter 4507 which governs the issuance of a driver's license. R.C. 4507.06 is entitled "Form and contents of application for license" and provides, in pertinent part:

> (A)(1) Every application for a driver's license * * * shall be made upon the approved form furnished by the registrar of motor vehicles and shall be signed by the applicant.
>
> <u>Every application shall state</u> the following:
>
> (a) The applicant's name, date of birth, social security number if such has been assigned, sex, general description, including height, weight, color of hair, and eyes, residence address, including county of residence, duration of residence in this state, and <u>country of citizenship</u>;
>
> * * *
>
> Every applicant for a driver's license shall be photographed in color at the time the application for the license is made. <u>The application shall state any additional information that the registrar requires</u>.

(Emphasis added.)

{¶ 46} R.C. 4507.09 pertains to the expiration and renewal dates for licenses and provides, in pertinent part:

(A) * * * [E]very driver's license issued to a resident of this state expires on the birthday of the applicant in the fourth year after the date it is issued and every driver's license issued to a temporary resident expires in accordance with rules adopted by the registrar of motor vehicles. In no event shall any license be issued for a period longer than four years and ninety days.

* * * [E]very driver's license issued to a resident is renewable at any time prior to its expiration and any license of a temporary resident is nonrenewable. A nonrenewable license may be replaced with a new license within ninety days prior to its expiration in accordance with division (E) of this section.

* * *

(E) A nonrenewable license may be replaced with a new license within ninety days prior to its expiration upon the applicant's presentation of documentation verifying the applicant's legal presence in the United States. A nonrenewable license expires on the same date listed on the legal presence documentation, or on the same date in the fourth year after the date the nonrenewable license is issued, whichever comes first.

In accordance with Chapter 119. of the Revised Code, the registrar of motor vehicles shall adopt rules governing nonrenewable licenses for temporary residents. At a minimum, the rules shall include provisions specifying all of the following:

(1) That no nonrenewable license may extend beyond the duration of the applicant's temporary residence in this state;

(2) That no nonrenewable license may be replaced by a new license unless the applicant provides acceptable documentation of the person's identity and of the applicant's continued temporary residence in this state; * * *.

(Emphasis added.)

{¶ 47} R.C. 4507.01(A) provides the following relevant definitions:

"Resident" means a person who, in accordance with standards prescribed in rules adopted by the registrar, resides in this state on a permanent basis.

"Temporary resident" means a person who, in accordance with standards prescribed in rules adopted by the registrar, resides in this state on a temporary basis.

{¶ 48} The Ohio Administrative Code provides several properly promulgated rules which apply to applications for and the renewal of licenses in Ohio. Ohio Adm.Code 4501:1-1-37 provides the following concerning nonrenewable licenses and nonrenewable identification cards for temporary residents:

(A) As used in this rule,

(1) "Nonrenewable license" means an Ohio driver's license, * * * issued to an applicant who is not a citizen or permanent resident of the United States. A nonrenewable license shall not extend beyond the duration of an applicant's temporary residence in this state, and shall expire automatically on the same date listed on the applicant's legal presence documentation * * *.

* * *

(3) "Temporary resident" means any person who lives in Ohio but does not qualify as a resident of this state under paragraph (C) of rule 4501:1-1-35 of the Administrative Code.

(4) "Legal presence" means for the purposes of this rule that the individual has taken the necessary steps to ensure that they have a recognizable legal status with the United States as evidenced by the appropriate legal documents issued by the United States citizen and immigration services (USCIS).

(5) "Legal presence documentation" means for the purposes of this rule the legal documents issued by the United States citizen and immigration services (USCIS). The documentation must be verifiable in accordance with rule 4501:1-1-21 of the Administrative Code.

(B) A nonrenewable license * * * may be issued to a temporary resident of this state when the applicant presents acceptable documents, including those listed in rule 4501:1-1-21 of the Administrative Code, verifying the following: the

applicant's * * * <u>proof of Ohio street address and legal presence in the United States, and temporary residence in this state</u>.

(C) A <u>nonrenewable license</u> * * * may not be replaced by a new license * * * unless the applicant provides acceptable documentation of the applicant's * * * proof of Ohio street address, continued legal presence in the United States, and continued temporary residence in this state. Acceptable documentation shall conform to the documents listed in rule 4501:1-1-21 of the Administrative Code.

(D) A <u>nonrenewable Ohio driver's license</u> * * * <u>may contain any security features the registrar prescribes, including, but not limited to</u>:

(1) <u>The license shall list the month, day, and year of expiration</u>.

(2) <u>The license shall conspicuously state that it is "nonrenewable and nontransferable</u>."

(Emphasis added.)

{¶ 49} Ohio Adm.Code 4501:1-1-35 provides:

(A) No Ohio driver's license, * * * other than a nonrenewable license * * * shall be issued to any person unless that person qualifies as a resident of Ohio under this rule.

(B) The registrar of motor vehicles and all deputy registrars, in determining the residency of a person applying for an Ohio driver's license * * * shall be governed by this rule.

(C) For the purpose of this rule, <u>"resident" of Ohio means a person who is a native-born or naturalized citizen of the United States or a person who presents credible evidence from the United States citizen and immigration services (USCIS) that the person is a permanent resident of the United States</u>; and

(1) The person currently * * * lives within Ohio;

* * *

(F) Proof of Ohio residence must be shown in accordance with the acceptable documentation set forth in this chapter.

(Emphasis added.)

{¶ 50} Ohio Adm.Code 4501:1-1-21 identifies the acceptable identification to be submitted along with an application for a driver's license. That section provides, in relevant part:

> (A) The person who signs an application for a * * * driver's license * * * shall present along with the application <u>identification documents sufficient to establish the person's true identity</u> including * * * <u>legal presence in the United States</u> * * *.
>
> * * *
>
> (B) [T]he applicant shall present at least two identification documents consisting of either one primary and one secondary document or two primary documents.
>
> (C) * * * The following are acceptable primary documents:
>
> * * *
>
> (4) <u>Appropriate United States citizenship and immigration services (USCIS) documents which are original and valid, or like documents issued by the successor agency to the USCIS</u>;
>
> * * *
>
> (G) The following documents shall be acceptable to establish the applicant's legal presence in the United States:
>
> (1) A birth certificate, either an original or certified copy, with a seal and issued by an appropriate governmental agency of any state, territory, or possession of the United States, provided that a birth certificate issued by Puerto Rico must have been issued on or after July 1, 2010;
>
> (2) A United States passport;
>
> (3) A United States passport card;
>
> (4) A naturalization document issued by the United States;
>
> (5) Appropriate United States citizenship and immigration services (USCIS) documents which are original and valid, or

like documents issued by the successor agency to the USCIS showing the dates of legal presence. <u>The registrar may require that any documentation presented be verifiable through the verification lawful status (VLS) or systematic alien verification entitlement (SAVE) databases maintained by the federal government</u>.

* * *

(M) <u>If the person who signs the application does not provide identification as required by this rule, the application shall not be accepted by</u> the registrar of motor vehicles or any deputy registrar. <u>Additional documentation may be required if the above documentation provided is questionable</u>.

* * *

(O) The registrar of motor vehicles may issue a directive adding any document to, or removing any document from, the application of this rule for good cause pending the amendment of the rule.

(Emphasis added.)

{¶ 51} According to respondents, relator is, by definition, a temporary resident of the state of Ohio and his driver's license is nonrenewable. Relator counters by asserting that his presence in Ohio for 16 years demonstrates that he is a permanent resident and the fact that he has already renewed his driver's license several times over the years demonstrates that his license is renewable. For the reasons that follow, the magistrate agrees with respondents' argument.

{¶ 52} First, the magistrate finds that relator has failed to present evidence that he is a permanent resident of the United States. As such, he has not demonstrated that he is a "resident." R.C. 4507.01(A) defines a temporary resident as "a person who, in accordance with standards prescribed in rules adopted by the registrar, resides in this state on a temporary basis." Ohio Adm.Code 4501:1-1-35(C) provides that a "resident" is "a person who is a native-born or naturalized citizen of the United Sates or a person who presents credible evidence from * * * (USCIS) that the person is a permanent resident of the United States" and "currently * * * lives within Ohio." Relator does currently live in

Ohio; however, relator's asylee status does not, and has not, necessarily made him a permanent resident of the United States.

{¶ 53} The grant of asylum can be revoked or terminated under certain conditions. Asylee status is not synonymous with citizenship which can be renounced by the individual but cannot be revoked or terminated by the government. As such, relator's asylee status and his presence in the state of Ohio for 16 years does not, by definition, render him a resident under the statute. Instead, respondents are correct to assert that he is, by definition, a temporary resident.

{¶ 54} Second, R.C. 4507.01(A) provides that "resident" and "temporary resident" are to be determined according to properly promulgated rules. Ohio Adm.Code 4501:1-1-21(G) specifically lists the documents which are acceptable to reestablish an applicant's legal presence in the United States. Conspicuously absent from that list is the document relator argues should be found to be acceptable: the May 21, 1998 order granting him asylum.

{¶ 55} Third, relator's arguments that his license is, by definition, renewable since he has "renewed" it several times, is incorrect. Ohio Adm.Code 4501:1-1-37(C) makes it clear that a nonrenewable license may be issued to a temporary resident and "may * * * be replaced by a new license * * * [when] the applicant provides acceptable documentation of the applicant's * * * proof of Ohio street address, continued legal presence in the United Sates, and continued temporary residence in this state." (Emphasis added.) If and when relator provides the required documentation, his current license will be replaced by a new nonrenewable license. And, in the event that relator becomes a citizen of the United States, he would, by definition, become a resident of Ohio and could apply for a renewable license.

{¶ 56} A plain reading of the statute, and the rules promulgated thereunder, demonstrates that respondents are correctly applying the requirements of Ohio law by requiring that relator provide additional documentation. In fact, relator does not dispute that Ohio law requires that he file the additional documentation. Instead, relator contends that these state rules and regulations conflict with the provisions of the REAL ID Act enacted by Congress. Relator contends that Ohio's provisions unlawfully discriminate against asylees in a manner which conflicts with and undermines the

standards established by Congress. Relator contends the state is preempted from enforcing these requirements.

{¶ 57} For the reasons that follow, it is this magistrate's decision that Ohio's rules and regulations with regard to the renewal of a driver's license does not conflict with the federal law and the state of Ohio is not preempted from enforcing these rules and regulations.

{¶ 58} Relator argues that state law conflicts with federal law. Relator argues that federal law completely preempts state law. The magistrate disagrees:

> The doctrine of federal preemption originates from the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Constitution, Article VI, cl. 2. Pursuant to the Supremacy Clause, the United States Congress has the power to preempt state laws. *In re Miamisburg Train Derailment Litigation,* 68 Ohio St.3d 255, 259, 626 N.E.2d 85 (1994).
>
> Preemption may be either expressed or implied. *Gade v. Natl. Solid Wastes Mgt. Assn.,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). Express preemption occurs when Congress explicitly defines "the extent to which its enactments pre-empt state law." *English v. Gen. elec. Co.,* 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.E.2d 65 (1990). Implied preemption of state law may occur when Congress has created a " 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Id.* at 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).
>
> Preemption is fundamentally a question of congressional intent. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407. However, in all preemption cases, we start with the presumption that the states' historic police powers shall not be superseded by federal law unless that is shown to be the clear and manifest purpose of Congress. *Rice* at 230, 67 S.Ct. 1146, 91 L.Ed. 1447. *See also*

> *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action"). The party seeking to overcome the presumption against preemption bears a heavy burden. *DeBuono v. NYSA—ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). Further, the scope of preemption, if any, is to be determined while keeping this presumption in mind. *Medtronic* at 485, 116 S.Ct. 2240, 135 L.Ed.2d 700. Accordingly, "[t]he applicable preemption provision must be read narrowly 'in light of the presumption against pre-emption of state police power regulations.' " *In re Miamisburg* at 264, 626 N.E.2d 85, quoting *Cipollone* at 518, 112 S.Ct. 2608, 120 L.Ed.2d 407.

*Girard v. Youngstown Belt Ry. Co.,* 134 Ohio St.3d 79, 2012-Ohio-5370, ¶ 13-15.

{¶ 59} In a limited sense, the magistrate acknowledges that the federal government has directed state law concerning the standards for issuing a driver's license; however, the federal law does not preempt Ohio's laws and regulations.

{¶ 60} The magistrate finds that relator's reliance on *Arizona v. United States,* ___ U.S. ___, 132 S.Ct. 2492 (2012) is misplaced. The United States Supreme Court found that certain provisions of Arizona law were preempted by federal law. Specifically, the provisions which (1) required legal immigrants to carry registration documents at all times; (2) made it a crime for an illegal immigrant to search for or hold a job in the state; and (3) allowed state police to arrest any individual for suspicion of being an illegal immigrant. The U.S.S. court held that "the Federal government has occupied the field of alien registration," meaning that all state action, "even complementary state regulation[,] is impermissible." *Id.* at 2502. The court also held that "Congress made a deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment" and that a state law which imposed criminal penalties was "an obstacle to the regulatory system Congress chose." *Id.* at 2504-05. The court further held that "Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances. By nonetheless authorizing state and local officers to engage in

these enforcement activities as a general matter, [Arizona law] 6 creates an obstacle to the full purposes and objectives of Congress."  *Id.* at 2507.

{¶ 61} These three provisions were found to be preempted by federal law because Section 3 intruded on the field of alien registration, a field in which Congress left no room for states to regulate; Section 5 imposed a criminal penalty that was an obstacle to the federal regulatory system; and, by authorizing state and local offices to make warrantless arrests of certain aliens suspected of being removable, Section 6 created an obstacle to federal law.

{¶ 62} By comparison, here Ohio has done nothing more than what the federal government has expressly mandated.  Ohio's laws and regulations do not, as relator suggests, interfere with the federal government's classification or treatment of aliens.  As mandated by the REAL ID Act, Ohio law simply sets out procedures whereby the state can verify the legal status of applicants for an Ohio driver's license.  The magistrate finds that the application of *Arizona* to the facts of this case does not establish that Ohio's actions are preempted.

{¶ 63} Before the REAL ID Act was passed, the individual states set their own standards.  There was no uniform standard and the states had absolute authority.  After the REAL ID Act was passed, states no longer have absolute authority if the states want their residents to be able to use a driver's license for federal purposes.  With the passage of the REAL ID Act, the federal government set minimum standards but did not entirely preempt the states' authority.

{¶ 64} The magistrate finds that relator's arguments fail because:  (1) the REAL ID Act specifically sets forth the minimum requirements which must be met in order for a driver's license or identification card to be used for federal purposes; (2) by establishing minimum standards, the Act clearly allows for greater scrutiny; (3) the REAL ID Act specifically left the manner of implementation and procedures to the individual states to determine; (4) there is no conflict between the REAL ID Act and Ohio's rules and regulations; and (5) the documentation which relator attempts to utilize to demonstrate his legal presence in the United States does not contain an end date nor does it indicate that his asylee status is permanent.

{¶ 65} Based on the foregoing, the magistrate finds that relator is not able to demonstrate that he has a clear legal right nor that respondents have a clear legal duty to accept the documentation which he provided and issue him a new driver's license. As such, relator's motion for summary judgment should be denied and respondents' motion for summary judgment should be granted. This court should deny relator's request for a writ of mandamus.

_/S/_  MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).