[Cite as *Chibinda v. Bur. of Motor Vehicles*, 2018-Ohio-1378.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Peter Chibinda, et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 17AP-117 |
| v. | : | (C.P.C. No. 16CVH-759) |
| Ohio Bureau of Motor Vehicles, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 12, 2018

**On brief:** *Peter Chibinda*, pro se; *Dora Chibinda*, pro se.

**On brief:** *Michael DeWine*, Attorney General, and *Peter L. Jamison*, for appellee. **Argued:** *Peter L. Jamison*.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiffs-appellants, Peter Chibinda and Dora Chibinda, appeal from a judgment of the Franklin County Court of Common Pleas granting judgment on the pleadings to defendant-appellee, Ohio Bureau of Motor Vehicles ("BMV"). For the following reasons, we affirm that judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} We have examined the entire record and the affidavits submitted by the parties. While these affidavits were not attached to the complaint or the answer, they are helpful in understanding the underlying background and facts of this litigation, all the while limiting our review to the appropriate standard required by law.

{¶ 3} The Chibindas are from Zambia but have lived in Ohio for over 25 years and have had driver's licenses the entire time of their Ohio residence until November 2015 when the BMV denied their applications. The Chibindas contend that they submitted all the

required documentation to renew their driver's licenses. The Chibindas submitted an approved immigration form I-130 (visa petition for immediate relatives of American citizen) and a receipt for adjustment of status (Form I-485) to permanent residency (green card). These are the documents they had submitted in previous years to renew their licenses. The Chibindas argue that the BMV required them to produce valid passports, but their passports expired 20 years prior.

{¶ 4} The Chibindas filed a pro se complaint in the Franklin County Court of Common Pleas, seeking declaratory and emergency injunctive relief to require the BMV to renew their driver's licenses.[1] The Chibindas argue in their complaint that the statutes governing the BMV do not require driver license applicants to produce valid passports and the BMV lacks the legal authority to require such documentation.

{¶ 5} The BMV filed a motion requesting the court reclassify the case category from an administrative appeal to a declaratory judgment since the relief the Chibindas sought was declaratory in nature. The trial court granted the motion and reclassified the case category.

{¶ 6} Peter Chibinda filed a purported affidavit that was not notarized. In this document, Mr. Chibinda states he came to the United States in 1990 with an F1 student visa and his wife joined him in December 1991 with an F2 visa (spouse of an F1 visa holder). After receiving his Ohio driver's license, he states he renewed it several times without any incident. In December 2012, however, Mrs. Chibinda could not renew her license. Mrs. Chibinda received a Form I-797 of her application for Form I-485 and was able to renew her license. Previously, Mr. Chibinda used his approved Form I-130, which allows him to apply for a green card, to renew his driver's license. The Chibindas hired a lawyer to help them apply for green cards.

{¶ 7} Angela Dickens, a customer service manager of the BMV, filed an affidavit and explained in her affidavit that she emailed Mr. Chibinda many times and requested documents. He emailed the requested documents, with the exception of a valid passport from Mrs. Chibinda's country of origin. Mr. Chibinda explained that they could not obtain such passports because they were "de facto dissidents" as far as their country was

---

[1] Mrs. Chibinda did not sign the original complaint so the Chibindas filed an amended complaint, which both pro se litigants properly signed.

concerned. (Dickens' Aff. at ¶ 10, attached to Mar. 2, 2016 Def.'s Memo. Contra. Inj. Relief.) He did provide a page from Mrs. Chibinda's passport, but it consisted of a visa that expired in August 1997.

{¶ 8}  Ms. Dickens stated she explained to Mr. Chibinda that the documents were not sufficient for Mrs. Chibinda to receive a nonrenewable license because the limited passport provided did not demonstrate a valid passport. A second reason for denying the application was because Mrs. Chibinda's application for an I-766 employment authorization card had been denied by U.S. Citizenship and Immigration Services ("USCIS") on November 24, 2015. The BMV could not issue her a nonrenewable driver's license even if Mrs. Chibinda provided a valid passport.

{¶ 9}  Previously, the BMV issued a nonrenewable driver's license to Mrs. Chibinda because Mrs. Chibinda was able to provide an I-766 employment authorization card that was unexpired as well as a Form I-797 application for a new I-766 employment authorization card.

{¶ 10} The BMV issued a nonrenewable driver's license to Mr. Chibinda on January 30, 2014, and it expired on January 23, 2016. Mr. Chibinda provided an I-766 employment authorization card with an expiration date of December 28, 2012, as well as a Form I-797 approval notice for a case type I-130 Petition for Alien Relative dated January 23, 2014. However, Mr. Chibinda's driver's license was suspended on August 24, 2015 upon a violator compact suspension request from the state of Kentucky. (Dickens' Aff. at ¶ 13.)

{¶ 11} Ms. Dickens continued in her affidavit that the BMV did not have a record of Mr. Chibinda applying for a new nonrenewable driver's license. Regardless, the BMV could not issue one until the suspension would be resolved. And once the suspension is resolved, Mr. Chibinda would be required to submit valid USCIS documents to demonstrate legal presence in the United States in order to obtain a nonrenewable driver's license. (Dickens' Aff. at ¶ 14.)

{¶ 12} After a hearing, a magistrate issued a decision denying injunctive relief. The trial court adopted the magistrate's decision and denied the request for injunctive relief on April 29, 2016. The Chibindas filed objections. The BMV filed a motion for judgment on the pleadings, which the trial court granted on January 20, 2017.

## II. ASSIGNMENTS OF ERROR

{¶ 13} The Chibindas filed a notice of appeal and raise the following issues for our review:

> [1.] The Trial Court erred by ruling that because there was no final administrative decision the court can change an administrative appeal under R.C. Section 119.12 to "other."
>
> [2.] The Trial Court committed an error by ruling that ORC 4507.01 could be construed as giving any DPS/BMV agent the authority to expand Agency Rules and Standards as mandated by the General Assembly.
>
> [3.] The Trial Court Erred by depriving Appellants of due process right [sic].

## III. STANDARD OF REVIEW

{¶ 14} A Civ.R. 12(C) motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 5 (10th Dist.). A Civ.R. 12(C) motion "has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted." *Easter v. Complete Gen. Constr. Co.*, 10th Dist. No. 06AP-763, 2007-Ohio-1297, ¶ 8, citing *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). A trial court must construe all material allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Whaley* at 581, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165 (1973). "The court will grant the motion if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief." (Emphasis omitted.) *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 8, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). A motion for judgment on the pleadings tests the allegations of the complaint and presents a question of law. *Peterson* at 166, citing *Conant v. Johnson*, 1 Ohio App.2d 133 (4th Dist.1964). We review the trial court's decision granting judgment on the pleadings and thereby dismissing the action according to a de novo standard. *Zhelezny* at ¶ 9.

{¶ 15} For a trial court to grant declaratory relief, a plaintiff must demonstrate that (1) a real controversy exists between the parties, (2) the controversy is justiciable in

character, and (3) speedy relief is necessary to preserve the rights of the parties.  *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio St.2d 93, 97 (1973).  " 'There are only two reasons for dismissing a complaint for declaratory judgment before the court addresses the merits of the case: (1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may be lost or impaired; or (2) in accordance with R.C. 2721.07, the declaratory judgment will not terminate the uncertainty or controversy.' "  *Hill v. Croft*, 10th Dist. No. 05AP-424, 2005-Ohio-6885, ¶ 12, quoting *Halley v. Ohio Co.*, 107 Ohio App.3d 518, 534 (8th Dist.1995).

## IV.  DISCUSSION

### A.  First Assignment of Error

{¶ 16}  In their first assignment of error, the Chibindas contend the trial court erred by ruling that because there was no final administrative decision, the trial court can change an administrative appeal under R.C. 119.12 to an "other" category.  The trial court changed the classification of the case from an administrative appeal to an "other" civil action.  By doing so, the Chibindas argue the trial court did not have jurisdiction of their appeal from an administrative order.

{¶ 17} The Chibindas did not allege in their complaint that an administrative hearing was held nor that the BMV issued an adjudicative order denying their application for driver's licenses.  On page three of their amended complaint, they specifically argue there was no proper adjudication of their case at the BMV.  The Chibindas argue that because the BMV is an administrative agency, this appeal from the denial of their applications for driver's licenses is an administrative appeal and, thus, the trial court could not change the classification.

{¶ 18}  R.C. 119.12 provides as follows:

> (A) (1) Except as provided in division (A)(2) or (3) of this section, any party adversely affected by any order of an agency issued pursuant to an adjudication * * * denying the issuance or renewal of a license or registration of a licensee, * * * may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident.

{¶ 19}  Generally, an administrative appeal is appropriate when the order is issued as a result of an adjudication.  *Columbus S. Power Co. v. Ohio Dept. of Transp.*, 10th Dist. No. 93APE09-1280 (Mar. 1, 1994), citing *Brown v. Ohio Dept. of Transp.*, 83 Ohio App.3d

879 (10th Dist.1992). R.C. 119.01(D) defines "Adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature." "An act which is an adjudication is quasi-judicial in nature, involving notice, hearing, the opportunity to introduce testimony through witnesses, and a finding or decision made in accordance with statutory authority." *Columbus S. Power Co.,* citing *Brown* at 882. An adjudication that results in an administrative order is required for common pleas court appellate review under R.C. 119, the Ohio Administrative Procedures Act. No adjudication or an administrative order was issued by the BMV or appealed by the Chibindas in this case.

{¶ 20} We have previously determined that a declaratory judgment action is the appropriate legal vehicle for challenging the BMV's authority to consider a person's citizenship status when applying for a driver's license. *See State ex rel. Sagallah v. Born*, 10th Dist. No. 13AP-787, 2014-Ohio-3106, ¶ 12-15. Since the nature of the Chibindas' complaint is declaratory in nature, the trial court did not err in changing the title of the case to a civil appeal. The Chibindas' first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 21} The Chibindas argue in their second assignment of error that the trial court erred when it held that R.C. 4507.01 could be construed to give any BMV agent the authority to expand the "Agency Rules and Standards as mandated by the General Assembly." (Chibindas' Brief at 6.) In essence, the Chibindas argue that the customer service representative who denied their applications for driver's licenses because they did not have necessary documentation, lacked the authority to make final decisions for the BMV. The Chibindas also argue that BMV rules were not effective because they were not published.

{¶ 22} But this argument differs from the allegations the Chibindas raised in their complaint. In their complaint, the Chibindas alleged the BMV exceeded its authority under both state and federal laws when it required them to produce certain documents to obtain nonrenewable licenses.

{¶ 23} R.C. 4507.09 governs the renewal of driver's licenses and the issuance and replacement of nonrenewable driver's licenses. Under R.C. 4507.09(A) and (E), the BMV must adopt rules for the issuance of nonrenewable licenses of temporary residents. R.C.

4507.09(A) ("[E]very driver's license issued to a temporary resident expires in accordance with rules adopted by the registrar of motor vehicles.").  This statute also provides that "any license of a temporary resident is nonrenewable.  A nonrenewable license may be replaced with a new license within ninety days prior to its expiration in accordance with division (E) of this section."  *Id.*

{¶ 24}  R.C. 4507.09(E) provides:

> A nonrenewable license may be replaced with a new license within ninety days prior to its expiration upon the applicant's presentation of documentation verifying the applicant's legal presence in the United States.  A nonrenewable license expires on the same date listed on the legal presence documentation, or on the same date in the fourth year after the date nonrenewable license is issued, whichever comes first.  A nonrenewable license is not transferable, and the applicant may not rely on it to obtain a driver's license in another state.
>
> In accordance with Chapter 119 of the Revised Code, the registrar of motor vehicles shall adopt rules governing nonrenewable licenses for temporary residents.  At a minimum, the rules shall include provisions specifying all of the following:
>
> (1) That no nonrenewable license may extend beyond the duration of the applicant's temporary residence in this state;
>
> (2) That no nonrenewable license may be replaced by a new license unless the applicant provides acceptable documentation of the person's identity and of the applicant's continued temporary residence in this state;
>
> (3) That no nonrenewable license is valid to apply for a driver's license in any other state;
>
> (4) That every nonrenewable license may contain any security features that the registrar prescribes.

{¶ 25}  R.C. 4507.09(E)(2) provides the BMV is required to adopt rules "governing nonrenewable licenses for temporary residents," and this law requires that no nonrenewable license be replaced unless the applicant provides acceptable documentation of the person's identity and continued temporary residence in this state.  The BMV has accordingly promulgated administrative code provisions governing the issuance and replacement of nonrenewable licenses.

{¶ 26} Ohio Adm.Code 4501:1-1-37 defines a "nonrenewable license" as "an Ohio driver's license, * * * issued to an applicant who is not a citizen or permanent resident of the United States. A nonrenewable license shall not extend beyond the duration of an applicant's temporary residence in this state, and shall expire automatically on the same date listed on the applicant's legal presence documentation, or on the same date in the fourth year after the date the nonrenewable license is issued, whichever comes first." Ohio Adm.Code 4501:1-1-37(B) provides that a nonrenewable license may be issued to a temporary resident if the applicant presents "acceptable documents including those listed in rule 4501:1-1-21 of the Administrative Code, verifying the following: the applicant's full legal name, date of birth, social security number if ever assigned, proof of Ohio street address and legal presence in the United States, and temporary residence in this state." Ohio Adm.Code 4501:1-1-37(C) provides that a nonrenewable license may not be replaced by a new license "unless the applicant provides acceptable documentation of the applicant's full legal name, date of birth, social security number if ever assigned, proof of Ohio street address, continued legal presence in the United States, and continued temporary residence in this state. Acceptable documentation shall conform to the documents listed in rule 4501:1-1-21 of the Administrative Code."

{¶ 27} Ohio Adm.Code 4501:1-1-21 lists acceptable identification required for submission with an application for a driver's license. Ohio Adm.Code 4501:1-1-21(G)(6) sets forth a list of the types of documents that are acceptable to establish the applicant's legal presence in the United States when an individual is not a United States citizen, including "appropriate United States citizenship and immigration services (USCIS) documents that are original and valid, or like documents issued by the successor agency to the USCIS showing the dates of legal presence. The registrar may require that any documentation presented be verifiable through the verification lawful status (VLS) or systematic alien verification entitlement (SAVE) databases maintained by the federal government."

{¶ 28} The Ohio General Assembly has imbued the BMV with the authority to promulgate rules and standards in issuing nonrenewable driver's licenses and in determining the USCIS documents necessary to establish an applicant's legal status. The Supreme Court of Ohio has held that administrative agencies are to be given due deference

when interpreting legislative directives. *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282 (2001). Thus, the BMV may promulgate rules and its employees may implement those rules about which USCIS documents are necessary to establish a nonrenewable driver's license applicant's legal status.

{¶ 29} The Chibindas additionally argue in their second assignment of error that the BMV rules had not been published and were thus not effective, since they did not appear on the BMV website. While perhaps it would have been helpful to persons like the Chibindas to have the rules published on the BMV website, the official publication of the rules are in the Ohio Administrative Code, which publication is required under state statute. R.C. 103.05. It is well-established that pro se litigants are held to the same rules, procedures, and standards as litigants represented by counsel. *See Goodrich v. Ohio Unemployment Comp. Review Comm.*, 10th Dist. No. 11AP-473, 2012-Ohio-467, ¶ 25. The Chibindas' arguments as to their second assignment of error are ineffective and lack merit. As a result, their second assignment of error is overruled.

## C.  Third Assignment of Error

{¶ 30} In their third assignment of error, the Chibindas argue that the trial court erred by depriving them of their due process rights by denying their objection to the BMV's motion to reclassify the case. The Chibindas misapprehend that their case was never properly classified as an administrative appeal. They argue the trial court changed the case classification and denied them due process rights, but the trial court simply reclassified the case once it determined, as classified initially, their action did not constitute an administrative appeal under Chapter 119 of the Ohio Revised Code. This was considered in the first assignment of error, and, as such, the Chibindas' third assignment of error is overruled.

{¶ 31} The foundation of the Chibindas' case is the argument that the BMV could not require them to produce a valid passport with their application for a nonrenewable driver's license. The Revised Code and the Administrative Code require that valid proof of the applicant's legal presence in the United States be offered for a license to drive a motor vehicle by one who is not a permanent resident of the United States. Ms. Dickens of the BMV testified Mrs. Chibinda's application was denied because she did not have a valid passport, and her application for an I-766 employment authorization card had been denied by USCIS. Construing the allegations in the Chibindas' amended complaint as true that the

BMV denied their applications, there is still the affirmative defense offered by the BMV that Mrs. Chibinda applied for a nonrenewable driver's license, while Mr. Chibinda did not due to the Kentucky suspension of his license. Since Mr. Chibinda has not filed an application, he does not have standing to file the complaint.[2] But on a motion for judgment on the pleadings the Chibindas' allegations are accepted as true, and drawing all reasonable inferences therefrom in their favor, they fail to state a claim upon which relief can be granted. The trial court did not err in granting the BMV's Civ.R. 12(C) motion for judgment on the pleadings.

## V. CONCLUSION

{¶ 32} For the foregoing reasons, the Chibindas' three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK, J., concurs.
SADLER, J., concurs in judgment only.

---

[2]

"It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." [*State ex rel. Ohio Academy of Trial Lawyers v.*] *Sheward*, 86 Ohio St.3d [451,] 469, 715 N.E.2d 1062, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 1994 Ohio 183, 643 N.E.2d 1088 (1994). "The essence of the doctrine of standing is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' " *Racing Guild of Ohio, Local 304 v. Ohio State Racing Comm.*, 28 Ohio St. 3d 317, 321, 28 Ohio B. 386, 503 N.E.2d 1025 (1986), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Under traditional standing principles, a plaintiff must show, at a minimum, that he has suffered " '(1) an injury that is (1) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.' " *ProgressOhio.org, Inc.* [*v. JobsOhio*], 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 7, quoting *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22. For common-law standing, a party wishing to sue must have a "direct, personal stake" in the outcome of the case; "ideological opposition to a program or legislative enactment is not enough." *Id.* at ¶ 1.

*State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, ¶ 18.