Per Curiam.
*100 {¶ 1} This case is the latest chapter in the ongoing campaign by disbarred attorney Stanley M. Chesley to shelter assets from his judgment creditors. In this original action, relators, Connie McGirr and 18 other judgment creditors ("the creditors"), seek a writ of prohibition to halt an action for an assignment for the benefit of creditors ("the ABC action") pending before respondent, Hamilton County Probate Judge Ralph Winkler.
{¶ 2} Judge Winkler has filed a motion to dismiss the petition. In addition, intervening *930 respondent, Eric W. Goering, as assignee of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("WSBC"), has filed a motion for judgment on the pleadings. The creditors have filed a motion to strike a memorandum filed by Goering in support of Judge Winkler's motion to dismiss. And lastly, Goering has filed a motion to clarify or modify this court's stay order.
{¶ 3} For the reasons set forth herein, we deny the motions and grant a peremptory writ of prohibition.
Background[1]
{¶ 4} In December 2004, the creditors filed a lawsuit alleging that Chesley and three other attorneys had stolen millions of dollars in settlement funds while representing them. On August 1, 2014, the Kentucky trial court ruled that Chesley was jointly and severally liable for $42 million. The Kentucky Court of Appeals affirmed the judgment in all respects. Chesley v. Abbott , 524 S.W.3d 471 (Ky.App.2017).
*101 {¶ 5} On March 21, 2013, the Supreme Court of Kentucky permanently disbarred Chesley for his conduct in the underlying representation. Kentucky Bar Assn. v. Chesley , 393 S.W.3d 584 (Ky.2013). Before he was permanently disbarred, Chesley was the president and sole shareholder of WSBC. On April 15, 2013, Chesley executed a wind-up agreement, pursuant to which Thomas Rehme agreed to hold the shares of WSBC in trust for the purpose of winding up operations.
{¶ 6} On June 23, 2015, Boone County Circuit Court Judge James R. Schrand ordered Chesley to transfer his beneficial interest in the WSBC shares to the creditors. Chesley has not transferred the shares to the creditors.
{¶ 7} On August 30, 2016, Rehme incorporated "Thomas F. Rehme, Trustee, Inc." as an Ohio for-profit corporation. Two days later, on September 1, 2016, he transferred the WSBC shares to the new corporation. On September 9, the corporation executed a "Deed of Assignment for the Benefit of Creditors" transferring the WSBC shares to Goering. On September 12, 2016, Rehme filed the deed in probate court, commencing the ABC action.
{¶ 8} On April 7, 2017, after Judge Winkler denied their motion to dismiss, the creditors commenced the present action for a writ of prohibition. At the same time, they filed a motion for an emergency stay of the ABC action.
{¶ 9} On April 12, 2017, Goering, as the assignee of WSBC, filed a motion in this court for leave to intervene. The next day, Judge Winkler filed a motion to dismiss the prohibition case. On April 17, 2017, this court granted the emergency stay and also granted Goering's motion for leave to intervene. 148 Ohio St.3d 1439, 2017-Ohio-1411, 72 N.E.3d 653.
{¶ 10} On April 24, 2017, the same day the creditors filed their brief in opposition to the motion to dismiss, Goering filed a pleading captioned "Memorandum in Support of Judge Winkler's Motion to Dismiss." Then, four days later, Goering filed an answer and a separate motion for judgment on the pleadings. The creditors responded with a motion to strike Goering's memorandum supporting Judge Winkler's motion. Lastly, on May 4, 2017, Goering *931 filed an emergency motion for clarification or modification of this court's stay order.
The motion to strike
{¶ 11} S.Ct.Prac.R. 4.01(B) provides, "If a party files a motion with the Supreme Court, any other party may file a response to the motion within ten days from the date the motion is filed, unless otherwise provided in these rules or by order of the Supreme Court." (Emphasis added.) Thus, the Rules of Practice expressly authorized Goering to file his memorandum in support of Judge Winkler's motion to dismiss, and it was filed within ten days of the motion. We therefore deny the motion to strike.
*102 The motions to dismiss and for judgment on the pleadings
{¶ 12} In order to dismiss a complaint under Civ.R. 12(B) for failure to state a claim, it must appear to the court that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. O'Brien v. Univ. Community Tenants Union, Inc ., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Likewise, a Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. Whaley v. Franklin Cty. Bd. of Commrs. , 92 Ohio St.3d 574, 582, 752 N.E.2d 267 (2001). In this case, the two motions present the same question of law: whether Judge Winkler lacks jurisdiction to preside over the ABC action.
{¶ 13} There are three elements necessary for a writ of prohibition to issue: the actual or imminent exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. State ex rel. Elder v. Camplese , 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. However, if the absence of jurisdiction is patent and unambiguous, then the petitioner need not establish the third prong, the lack of an adequate remedy at law. State ex rel. Sapp v. Franklin Cty. Court of Appeals , 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15. "Absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging the court's jurisdiction has an adequate remedy at law by appeal." State ex rel. Enyart v. O'Neill , 71 Ohio St.3d 655, 656, 646 N.E.2d 1110 (1995).
{¶ 14} In this case, the first element is not in dispute: Judge Winkler is plainly exercising, or is about to exercise, judicial power. State ex rel. Vanni v. McMonagle , 137 Ohio St.3d 568, 2013-Ohio-5187, 2 N.E.3d 243, ¶ 7. Judge Winkler and Goering, in their respective motions, contend that the second element is likewise not in dispute, because Judge Winkler has clear statutory jurisdiction over the ABC action. We agree.
{¶ 15} The Ohio Revised Code establishes a comprehensive scheme governing voluntary assignments for the benefit of creditors, under the jurisdiction of the probate court. R.C. Chapter 1313. The probate court assumes jurisdiction upon the filing of the transfer deed (so long as the filing occurs within ten days of its execution). R.C. 1313.01. The probate court then has the authority to, among other things, appoint and remove trustees, R.C. 1313.03 ; remove an assignee, R.C. 1313.07 ; appoint appraisers, R.C. 1313.15 ; and order the private sale of property, R.C. 1313.24. And as R.C. 2101.24(A)(2)(a) and (b) make clear, the probate court's jurisdiction over a particular subject matter is exclusive when the Revised Code expressly confers jurisdiction over that subject matter upon the probate court and not upon any other court or agency.
*103 {¶ 16} The evidence establishes that the transfer deed from the trust corporation to Goering was filed with the probate *932 court within ten days of its execution, which is all that is necessary to vest the probate court with jurisdiction.
{¶ 17} The creditors challenge Judge Winkler's jurisdiction on three grounds. First, they contend that Judge Winkler lacks jurisdiction because Judge Schrand in Kentucky has already declared the wind-up agreement to be a sham and ordered Chesley to transfer his interest in WSBC to the creditors. But even assuming that it applies, res judicata is an affirmative defense the validity of which a second tribunal has jurisdiction to decide. State ex rel. Lipinski v. Cuyahoga Cty. Common Pleas Court , Probate Div. , 74 Ohio St.3d 19, 20-21, 655 N.E.2d 1303 (1995) ; State ex rel. Flower v. Rocker , 52 Ohio St.2d 160, 162, 370 N.E.2d 479 (1977).
{¶ 18} Second, the creditors argue that permitting Judge Winkler to proceed with liquidating WSBC despite Judge Schrand's orders would violate the Full Faith and Credit Clause, Article IV, Section 1 of the United States Constitution. However, we agree with the Supreme Court of Colorado that an assertion of finality based on the Full Faith and Credit Clause is "in effect a plea of res judicata based upon a foreign judgment" and that the second court has jurisdiction to decide the applicability of that plea. Leonhart v. Thirteenth Judicial Dist. Court, Sedgwick Cty. , 138 Colo. 1, 6-8, 329 P.2d 781 (1958).
{¶ 19} Third, the creditors argue that the ABC action is an "end run" around fraudulent-transfer litigation already pending before a federal court and the federal case should take precedence. The jurisdictional-priority rule provides that as between state courts of concurrent jurisdiction, the tribunal whose power is first invoked acquires exclusive jurisdiction to adjudicate the whole issue and settle the rights of the parties. State ex rel. Dunlap v. Sarko , 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 9. The rule does not apply to proceedings in federal court. Wellman v. Salt Creek Valley Bank , 10th Dist. Franklin No. 06AP-177, 2006-Ohio-4718, 2006 WL 2614243, ¶ 8.
{¶ 20} In sum, we conclude that Judge Winkler does not patently and obviously lack jurisdiction over the ABC action. The creditors have an adequate remedy at law by way of appeal from any order Judge Winkler may issue, including an order denying the motion to dismiss for lack of jurisdiction. However, our analysis does not end there.
{¶ 21} Prohibition is also a proper remedy to prevent vexatious abuse of process. See Commercial Savs. Bank v. Wyandot Cty. Court of Common Pleas , 35 Ohio St.3d 192, 519 N.E.2d 647 (1988) ; State ex rel. Stark v. Summit Cty. Court of Common Pleas , 31 Ohio St.3d 324, 511 N.E.2d 115 (1987). In our judgment, the conduct of Chesley and WSBC warrants this extraordinary relief.
*104 {¶ 22} Goering and WSBC admit the existence of the judgment against Chesley, Judge Schrand's transfer order, and Chesley's noncompliance with that order. And while disputing the substance of the order, they concede the authenticity of the September 25, 2015 judgment entry in which Judge Schrand found that Chesley continues to maintain control over WSBC, declared the wind-up agreement "a sham," and found that Chesley
is utilizing WSBC and its existence during what is supposed to be a wind-up period, to prevent Plaintiffs, his judgment creditors, from executing on their Judgment. The Court finds he is taking action to render himself insolvent while directing assets to WSBC, including *933 fees from the Fannie Mae Litigation and tobacco litigation, and the transfer of $59 million from his personal accounts to WSBC.
{¶ 23} The record evidence demonstrates a pattern of misuse of the judicial process in Ohio by Chesley and WSBC to obstruct collection efforts and conceal Chesley's ongoing control of WSBC. On February 6, 2017, for example, Hamilton County Visiting Judge Richard A. Niehaus imposed a $10,000 sanction against Chesley for filing frivolous objections to domestication of the Kentucky judgment, objections that were "interposed for the purpose of delay and to cause a needless increase in the cost of litigation."[2] Abbott v. Chesley , Hamilton C.P. No. EX1600448, 5 (Feb. 6, 2017).
{¶ 24} The record also contains evidence to suggest that the ABC action, ostensibly filed to discharge WSBC's debts, was itself the product of fraud. United States District Court Judge Robert Cleland has imposed a temporary restraining order barring Chesley, Rehme, WSBC, and their agents from taking any actions to transfer or distribute WSBC funds. McGirr v. Rehme , S.D.Ohio No. 1:16-cv-464 (Sept. 19, 2016). According to Judge Cleland,
This filing [of the ABC action in probate court] followed Rehme's attempt to transfer all assets of WSBC to a new "Assignee," Mr. Eric Goering. The Court notes that this transfer was without consideration, and that this transfer appears to be with the intent to frustrate the judgment creditors. * * *
It is not lost on the Court that WSBC appears to be forum shopping. The Court finds the timing of this purported transfer particularly troubling, as this filing comes while a motion for preliminary injunction is *105 pending, after a two day hearing, and a motion for leave to amend the complaint to assert new causes of action is also pending.
{¶ 25} Over a year ago, we granted a writ of prohibition to prevent Hamilton County Common Pleas Court Judge Robert Ruehlman from presiding over an action filed by Chesley to prevent collection of the judgment. State ex rel. Ford v. Ruehlman , 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396. WSBC was a party in that prohibition action and in the underlying trial-court litigation. And the record in that case is replete with examples of abusive litigation tactics.
{¶ 26} In the trial-court action underlying the Ruehlman case, Chesley and WSBC sought declaratory and injunctive relief to prevent the creditors from domesticating or enforcing their Kentucky judgment in Ohio, forms of relief the common pleas court was without jurisdiction to provide. Id . at ¶ 64, 80. When the creditors sought to secure their judgment in Kentucky by requesting-and receiving-an order compelling Chesley to transfer his interest in WSBC, Chesley and WSBC moved to have the creditors' Kentucky counsel held in contempt in Ohio.[3]
{¶ 27} What makes this all the more egregious is that the creditors' attorney, who was named as a defendant in the common pleas case, was licensed in Kentucky but not Ohio and had taken no action *934 to enforce the judgment in Ohio. Id. at ¶ 5, 13. It was only after the Kentucky attorney commenced a prohibition action in this court that Chesley and WSBC voluntarily dismissed their claims against her, so that Judge Ruehlman could file a "suggestion of mootness" in the prohibition case. Id ., 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, at ¶ 35.
{¶ 28} On October 19, 2015, Judge Schrand granted a motion for a show-cause order against Chesley and scheduled a contempt hearing for October 29, 2015, expressly commanding Chesley to appear in person. Id ., 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.2d 396, at ¶ 38. When Chesley failed to appear, Judge Schrand issued a warrant for his arrest on a charge of contempt for failure to appear. Id . Chesley responded by suing Hamilton County Sheriff Jim Neil in the Hamilton County Court of Common Pleas to enjoin him from enforcing the arrest warrant in Ohio. Id . at ¶ 39.
{¶ 29} In addition to the conduct described above, we take judicial notice of Chesley and WSBC's actions in a fee-collection action by WSBC against a former client, at which Chesley (not Rehme) appeared as the firm's representative. See Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis , 191 F.Supp.3d 743, 746 (S.D.Ohio 2016). Only after approving a settlement and dismissing the case did District Court Judge James Carr learn about the wind-up agreement, the Boone *106 County judgment against Chesley, Judge Schrand's determination that the wind-up agreement was a sham, and Chesley's noncompliance with the order to transfer his interest in WSBC to the judgment creditors. Judge Carr issued a show-cause order, writing that " 'I feel tricked, and complicit, albeit unwittingly so, in chicanery, duplicity, and mendacity.' " Id. , quoting the show-cause order.
{¶ 30} Judge Carr ultimately granted motions to withdraw the show-cause order. Id. However, he was unsparing in his criticism. Of Judge Schrand's finding that the wind-up agreement was a sham, he wrote:
[T]he Sham Finding casts a bright light on the tenacity with which Chesley has sought, and continues unrelentingly to seek, to retain money that he and his confederates stole from their former client victims.
* * *
Someone * * * should have told me before trial about the Wind-Up Agreement and Turn-Over Order. Had someone told me about those documents, I would not feel that, however unwittingly, I have helped a bandit to escape.
(Emphasis sic.) Id ., 191 F.Supp.3d at 747, 749-750.
{¶ 31} Finally, we note that Chesley and WSBC have also used the courts of this state to intimidate the creditors by suing them for money damages. See Chesley v. Probate Estate of Abney , Hamilton C.P. No. A1602508.
{¶ 32} In Commercial Savs. Bank , we recognized that we lack original jurisdiction to issue an injunction to prevent the filing of future abusive lawsuits. 35 Ohio St.3d at 194, 519 N.E.2d 647. But we will issue a writ of prohibition to halt ongoing litigation that is shown to be vexatious. In our judgment, this extraordinary relief is warranted in this case due to its long and egregious litigation history. WSBC has admitted all the essential facts of that history, even as it spins its actions differently.
*935 {¶ 33} We therefore deny the motions to dismiss and for judgment on the pleadings and grant a peremptory writ of prohibition.
The motion for clarification/modification
{¶ 34} As previously noted, this court granted an emergency stay of the ABC action on April 17, 2017. 148 Ohio St.3d 1439, 2017-Ohio-1411, 72 N.E.3d 653. On May 4, 2017, Goering filed an "Emergency Motion" to clarify or modify the stay. In the motion, he claims that the stay is preventing him from taking a number of time-sensitive actions to preserve WSBC assets, including:
*107 • paying the monthly rent on the storage space housing WSBC's client files;
• paying the storage costs for vehicles owned by WSBC;
• submitting WSBC's tax returns to the Internal Revenue Service by September 15, 2017;
• depositing a $500,000 attorney-fee award check and disbursing 10 percent to co-counsel; and
• pursuing attorney fees in ongoing litigation.
{¶ 35} No modification of this court's stay can override the restraining order imposed by District Court Judge Cleland barring Chesley, Rehme, WSBC, and their agents from taking any actions to transfer or distribute WSBC funds. We therefore deny the motion for modification.
Conclusion
{¶ 36} For the reasons stated, we deny the motions to strike, to dismiss, for judgment on the pleadings, and for modification, and we hereby grant a peremptory writ of prohibition barring further proceedings in the ABC action.
Motions denied and writ granted.
O' Connor, C.J., and O'Donnell, Klatt, and Fischer, JJ., concur.
DeWine, J., dissents, with an opinion joined by Kennedy and French, JJ.
William A. Klatt, J., of the Tenth District Court of Appeals, sitting for O'Neill, J.

For the purpose of deciding Judge Winkler's motion to dismiss, we are required to accept all the factual allegations in the complaint as true. Mitchell v. Lawson Milk Co. , 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). With respect to Goering's motion for judgment on the pleadings, we consider the complaint and the answer. State ex rel. Midwest Pride IV, Inc. v. Pontious , 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). In deciding Goering's motion, we have relied only on allegations that Goering has admitted or not contested.

Judge Niehaus also levied a $2,500 sanction against Chesley's counsel, Terry Serena.

We can consider this document because it was placed into the record by Chesley and WSBC.