**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Leneghan v. Husted,* Slip Opinion No. 2018-Ohio-3361.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3361

THE STATE EX REL. LENEGHAN ET AL. *v.* HUSTED, SECY., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Leneghan v. Husted,* Slip Opinion No. 2018-Ohio-3361.]**

*Elections—Mandamus—Writ of mandamus sought to compel secretary of state and county boards of elections to not count ballots from certain precincts cast in the May 2018 primary election and to certify new results that do not include those ballots—Allegation that improprieties occurred during recount of votes—Cause dismissed.*

(No. 2018-0866—Submitted August 15, 2018—Decided August 23, 2018.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} Relator Melanie Leneghan was a candidate in the May 8, 2018 primary election for the Republican Party nomination for United States

Representative for the 12th Congressional District.[1]  Leneghan and her co-relator, Kay Clymer,[2] allege that improprieties occurred during the recount of votes in 16 Muskingum County precincts.  They seek writs of mandamus compelling respondents, the Muskingum and Franklin County Boards of Elections and Ohio Secretary of State Jon Husted, to certify official election results that exclude all ballots cast in those 16 precincts.

**{¶ 2}** For the reasons set forth below, we deny the motion of the Muskingum County Board of Elections ("the Muskingum Board") for judgment on the pleadings.  However, based upon our independent review under S.Ct.Prac.R. 12.04(C), we sua sponte dismiss the amended complaint for failure to state a claim. We deny relators' motion for leave to file a second amended complaint, because the proposed amendments would not cure the defects that prevent relators from stating an actionable claim and would therefore be futile.  We deny the remaining motions as moot.

**The allegations of the amended complaint**

**{¶ 3}** On May 8, 2018, the Ohio Republican Party held a primary election to nominate a candidate for United States Representative for the 12th Congressional District.  The field of 10 candidates included Leneghan and Troy Balderson, who ultimately was declared to be the winner of the primary.  According to relators' amended complaint, the results reported by the Muskingum Board showed that Balderson received approximately 78 percent of the votes cast in that county. Leneghan and Clymer were "suspicious" of the results, in part because, as they state in their amended complaint, the votes for Balderson "were double of any other

---

[1] The 12th District includes all of Delaware, Licking, and Morrow Counties and portions of Franklin, Marion, Muskingum, and Richland Counties.  *See* https://www.sos.state.oh.us/globalassets /publications/maps/2012-2022/congressional_2012-2020_districtmap.pdf (accessed Aug. 20, 2018).

[2] Clymer is a Muskingum County elector who volunteered as an appointed observer on Leneghan's behalf at the June 6, 2018 official recount at issue in this case.

2

candidate in any other county in the district, with the exception of Relator Leneghan receiving 44% of the vote in Richland County."

{¶ 4} On May 31, Leneghan submitted a written request for a recount of the votes cast in 16 specified precincts in Muskingum County. The recount was scheduled for June 6.

{¶ 5} The statute governing the procedure for conducting a recount provides, in relevant part, that "[a]t the time and place fixed for making a recount, the board of elections, in the presence of all observers who may be in attendance, shall open the sealed containers containing the ballots to be recounted, and shall recount them." R.C. 3515.04. But when one of Leneghan's appointed observers, Nicholas Murdock, arrived at the appointed time at the recount location on June 6, he discovered that the ballots had already been unsealed and sorted by precinct. According to Murdock's affidavit, the director of the Muskingum Board told him that when the ballots were sealed, the precincts had been mixed together, so the Muskingum Board had unsealed the ballot containers and sorted the ballots two days early, on June 4, to ensure completion of the recount in a timely manner.

{¶ 6} The amended complaint avers that "[t]he warehouse [where the recount occurred] consisted of four tables that had names on them for sorting the votes. The names were pre-sorted on the tables by Melanie Leneghan, Troy Balderson, Tim Kane, Other, and No Vote." It is unclear what the amended complaint means by "[t]he *names* were pre-sorted." (Emphasis added.) To the extent that the amended complaint seems to be alleging that the *ballots* were divided in advance into piles according to the candidate selected on each ballot, that allegation is not supported by Murdock's affidavit.

{¶ 7} The Muskingum Board staff conducted a manual recount of the ballots in public view, after which the ballots were electronically scanned for verification of the results. Before the Muskingum Board voted to certify the recount results, Murdock requested a copy of the Muskingum Board's official tally

sheet. In response, he was given a document dated *June 5*, 2018 (the day before), captioned "Election Summary Results," and was told that it stated the results of the recount. According to Murdock, election officials identified this as the same document they would send to the Franklin County Board of Elections ("the Franklin Board"). (Because the 12th Congressional District is a multicounty district, the results must be submitted to the board of elections of the county in which the major portion of the population of the district resides. R.C. 3515.05.) Based on these facts, relators believe that the Muskingum Board conducted an electronic recount a day before the official recount without giving notice to them.

{¶ 8} On June 20, 2018, Leneghan and Clymer commenced the present mandamus action, and on June 28, they filed an amended complaint. Their amended complaint seeks to compel the Muskingum Board to "set aside and not count" the ballots from the 16 Muskingum County precincts at issue in the recount and to certify new results to the secretary of state and the Franklin Board based on the votes from the remaining precincts. Leneghan and Clymer allege that if those ballots were set aside, then Leneghan would win the primary by approximately 1,400 votes. In addition, the amended complaint seeks writs of mandamus compelling Husted and the Franklin Board to amend the official results accordingly. Alternatively, the amended complaint asks us to order a new primary election in Muskingum County for the Republican Party nomination for the 12th Congressional District and to order the Muskingum Board "to reimburse Relator Leneghan the hundreds of thousands of dollars she spent on the primary election," to pay damages, to reimburse Leneghan her recount fees, and to pay relators' attorney fees. Finally, the amended complaint demands a writ of mandamus compelling Husted to investigate the alleged election-law violations that occurred in Muskingum County.

**Procedural history**

{¶ 9} Husted was the first respondent to file an answer, on July 17. Two days later, the Franklin Board filed an answer and the Muskingum Board filed an answer and a motion for judgment on the pleadings. On July 27, relators filed a motion to strike a portion of Husted's answer.

{¶ 10} On July 30, relators filed a flurry of motions: a motion to strike portions of the Franklin Board's answer, an omnibus motion captioned "Relators' Motion to Strike, Motion to Re-Classify and Motion to Dismiss Respondent Muskingum County Board of Elections Claims Made Within Their Answer and Judgement [sic] on the Pleadings" and then later that same day, amended versions of those two motions. Relators also filed a motion for leave to file a second amended complaint. The three respondents all filed memoranda in response to the various motions.

{¶ 11} Meanwhile, on July 19, Balderson filed a motion for leave to intervene. On July 30, relators filed a memorandum in opposition. Two days later, relators filed a motion for leave to file a revised memorandum in opposition to Balderson's motion or, in the alternative, for leave to withdraw their memorandum in opposition.

{¶ 12} On August 8, relators filed a motion to expedite the case and a motion for injunctive relief. The court sua sponte ordered the parties to file any responses by 5:00 p.m. on August 10. In addition to opposition memoranda from the three respondents, the court received a memorandum from Balderson, accompanied by a motion for leave to file. On August 16, relators filed a memorandum opposing Balderson's motion for leave to file his opposition memorandum.

## Legal analysis

### *The motion for judgment on the pleadings*

**{¶ 13}** When considering a Civ.R. 12(C) motion for judgment on the pleadings, a court must construe as true the material allegations made in the complaint, along with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, ¶ 10.[3] Judgment is proper only if it appears beyond doubt that the nonmoving party can prove no set of facts entitling it to relief. *Id.* " 'Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.' " *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

**{¶ 14}** The Muskingum Board's motion makes four arguments. First, the motion points out that relators' amended complaint alleges that by opening the ballot containers and conducting the electronic recount prematurely, the Muskingum Board acted "in violation of R.C. 3514.04." And elsewhere, the amended complaint suggests that unsealing the ballots violated "R.C. 3504.04." The Muskingum Board asserts that relators cannot establish the violation of a clear legal duty because R.C. 3514.04 does not exist and R.C. 3504.04 clearly does not apply.[4]

**{¶ 15}** This is a frivolous argument. The amended complaint cites the correct provision, R.C. 3515.04, eight times, including once *in between* the two typographical errors, which are on the same page of the amended complaint. The

---

[3] The Ohio Rules of Civil Procedure apply to original actions filed in this court unless they are clearly inapplicable or they conflict with this court's Rules of Practice. S.Ct.Prac.R. 12.01(A)(2)(b).

[4] R.C. 3504.04 requires the directors of county elections boards to deliver lists of former-resident voters eligible to vote for presidential and vice-presidential electors to polling places on or before election day.

Muskingum Board cites no authority for the proposition that a court should grant judgment on a complaint based on typographical errors regarding the legal authority cited without considering whether the *facts* alleged would, if true, state a claim for relief.

{¶ 16} Next, the Muskingum Board asserts that judgment on the pleadings is proper because the amended complaint does not present clear and convincing evidence that the alleged violation of R.C. 3515.04 had any impact on the outcome of the election. But a relator is not required to prove her case at the pleading stage. *See York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991). The Muskingum Board cites *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, 837 N.E.2d 1196, as a case in which this court entered judgment based on a relator's failure to meet the necessary burden of proof. But relief in *Harmon* was denied after a full election-contest evidentiary hearing, not on a motion for judgment on the pleadings. *Id*. at ¶ 12-13. A Civ.R. 12(C) motion presents only questions of law. *State ex rel. McGirr v. Winkler*, 152 Ohio St.3d 100, 2017-Ohio-8046, 93 N.E.2d 928, ¶ 12.

{¶ 17} Third, the Muskingum Board submits that judgment in its favor is proper based on evidentiary materials it submitted with its answer, specifically the affidavit of Timothy J. Thompson, Director of the Muskingum Board, who attests that even though the ballot containers were opened before the recount, the Muskingum Board acted properly at all times thereafter and that no ballots were added, altered, or destroyed during the recount. The "pleadings," as defined by the Rules of Civil Procedure, consist of the complaint and answer, a reply to a counterclaim, an answer to a cross-claim, and a third-party complaint and an answer thereto. Civ.R. 7(A). A "written instrument" attached to a complaint or answer also qualifies as part of the pleadings for all purposes. Civ.R. 10(C). But not every document attached to a pleading constitutes a Civ.R. 10(C) written instrument. Rather, "the term 'written instrument' in Civ.R. 10(C) has primarily been

interpreted to include documents that evidence the parties' rights and obligations, such as negotiable instruments, 'insurance policies, leases, deeds, promissory notes, and contracts.' " *Inskeep v. Burton*, 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 17, quoting 1 Klein & Darling, *Baldwin's Ohio Practice* 744-745 (2004); *see also State ex rel. Vandenbos v. Xenia*, 2d Dist. Greene No. 14-CA-14, 2015-Ohio-35, ¶ 14 (orders and opinions from prior cases between the parties are not part of the pleadings). Moreover, a motion for judgment on the pleadings tests the allegations of the complaint and therefore presents a pure question of law. *Chibinda v. Ohio Bur. of Motor Vehicles*, 10th Dist. Franklin No. 17AP-117, 2018-Ohio-1378, ¶ 14. Thompson's affidavit is therefore not a proper basis upon which to grant judgment on the pleadings.

{¶ 18} Finally, the Muskingum Board asserts a laches defense. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). Laches may bar relief in an election-related matter if the person seeking relief fails to act with the " 'utmost diligence.' " *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. However, a laches defense "rarely prevails in election cases." *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8.

{¶ 19} We reject the Muskingum Board's laches defense. The amount of delay involved—relators became aware of the events surrounding the recount on June 6, filed a complaint on June 20, and amended the complaint on June 28—does not seem excessive, considering that the relevant election was still some time away when the complaint was filed and the litigation is not expedited. (The fact that this

is not an expedited case is precisely why the Muskingum Board can file a Civ.R. 12(C) motion, which would not be permitted in an expedited election case, *see* S.Ct.Prac.R. 12.08(A)(3).) More importantly, the Muskingum Board has suffered no harm as a result of the alleged delay. The Muskingum Board asserts prejudice based upon the fact that the recount results were reported to the secretary of state on June 7 and therefore the delay "allowed the process to proceed and Respondents continued to process the recount and continue to prepare for the forthcoming general election." But under the Muskingum Board's theory, relators would have had to file suit *the same day* as the recount to prevent the results from being reported, a burden this court's jurisprudence has never imposed.

**{¶ 20}** For these reasons, we deny the motion for judgment on the pleadings.

*S.Ct.Prac.R. 12.04 review*

**{¶ 21}** "After the time for filing an answer to the complaint or a motion to dismiss, the Supreme Court will dismiss the case; issue an alternative or a peremptory writ, if a writ has not already been issued; or deny the request for the writ." S.Ct.Prac.R. 12.04(C). Our rules expressly contemplate the possibility of this court sua sponte denying relief in an original action, and we exercise that option in this case because we conclude that the amended complaint does not state a claim for mandamus relief, albeit for reasons other than those set forth in the motion for judgment on the pleadings.

**{¶ 22}** The primary theory of relators' amended complaint is that the Muskingum Board violated the rule codified in R.C. 3515.04 that ballots must remain in sealed containers and must be opened only at the time of the recount, in the presence of the observers. (The amended complaint also alleges other irregularities, which will be discussed below.) The Muskingum Board admits the violation in its answer: "In the presence of Democratic and Republican staff, bags containing the ballots had been opened before the recount for the sole purpose of

sorting the ballots by precinct." Thus, there is no dispute that one election irregularity occurred. *See O'Farrell v. Landis*, 135 Ohio St.3d 181, 2013-Ohio-93, 985 N.E.2d 458, ¶ 11 (O'Connor, C.J., ruling, pursuant to R.C. 3515.08(B), on procedural motions) (an "election irregularity" "must at least involve the potential violation of a constitution, statute, or rule pertaining to the election in question, or defective language on the ballot, or some other egregious defect or fraud in the ballot or election procedure"); *Squire v. Geer*, 117 Ohio St.3d 506, 2008-Ohio-1432, 885 N.E.2d 213, ¶ 19 (holding that the use of an uncertified voting-machine configuration was an election irregularity "because it violated the pertinent statute and rule"). The question this case presents is what remedy, if any, exists for this violation.

{¶ 23} One possibility is that the law does not provide *any* remedy for a party harmed by election irregularities in a congressional primary. The Ohio Revised Code provisions governing election contests do not apply to federal offices under the express terms of R.C. 3515.08(A). Rather, "[c]ontests of the nomination or election of any person to any federal office shall be conducted in accordance with the applicable provisions of federal law." *Id.* Unfortunately, federal law does not provide a framework for this particular case either, because the definition of the term "election," for purposes of federal election contests, "does not include a primary election." 2 U.S.C. 381(1). This raises the possibility that the cause should be dismissed as nonjusticiable.

{¶ 24} But dismissal on that basis would ignore this court's constitutional mandamus authority. This court has original jurisdiction in mandamus actions. Ohio Constitution, Article IV, Section 2(B)(1)(b); *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 8. In a conventional mandamus case, relators would have to demonstrate a clear legal right to have the contested ballots rejected, a corresponding clear legal duty for the respondents to certify new election results, and the lack of an adequate remedy in the ordinary

10

course of law. *See State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 8. They would have to prove their case by clear and convincing evidence. *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 135 Ohio St.3d 162, 2013-Ohio-36, 985 N.E.2d 441, ¶ 14.

{¶ 25} But this is not a conventional ballot-access mandamus action. Relators are seeking to undo the certified results of an election, and so this case, like any election contest, is subject to certain constitutional limitations, R.C. 3515.08(A) notwithstanding. In election contests, courts exercise "delegated political authority, not judicial authority," and for this reason, there are "stringent standards" for granting relief in an election contest. *In re Election of November 6, 1990 for Office of Atty. Gen.*, 58 Ohio St.3d 103, 105, 569 N.E.2d 447 (1991). A court will not disturb the result of an election " 'unless it is shown that the [election] result was contrary to the will of the electorate.' " (Brackets sic.) *Id.*, quoting *Mehling v. Moorehead*, 133 Ohio St. 395, 408, 14 N.E.2d 15 (1938).

> Where irregularities in an election are so great and so flagrant in character as to render it impossible to separate the illegal from the legal votes and raise doubt as to how the election would have resulted had such irregularities not occurred, they must be deemed fatal to the validity of the election and warrant the rejection of the entire vote of the election district.

*Otworth v. Bays*, 155 Ohio St. 366, 98 N.E.2d 812 (1951), paragraph one of the syllabus. The party challenging an election result must prove, by clear and convincing evidence, both the existence of one or more election irregularities and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the election. *In re Election of November 6, 1990* at 105-106.

**{¶ 26}** Here, the factual allegations made in the amended complaint, even if proved true, will not satisfy the elements necessary to set aside an election. Specifically, the amended complaint falls well short of making any allegation sufficient to satisfy the element of causation. The factual allegations of the amended complaint actually serve to establish that the election irregularities did *not* affect enough votes to change the election.

**{¶ 27}** Obviously, the mere fact that the sealed ballot containers were prematurely *opened* would not, alone, affect anything. Relators must also allege that election officials did something improper after the containers were opened, such as stuffing the ballot box with fraudulent Balderson votes or discarding legitimate Leneghan votes. But that is not what the amended complaint alleges. Rather, the amended complaint alleges that the original canvas of votes *in May* showed a suspiciously large vote tally in favor of Balderson. That result certainly could not have been caused by the premature opening of the ballot containers before the recount.

**{¶ 28}** At another point in the amended complaint, relators allege that the vote totals in the May 8, 2018 primary dropped by approximately 1,600 as compared to the 2014 primary, despite the fact that the number of registered voters in Muskingum County had risen by approximately 2,000 since 2016.[5] But that fact does not suggest that election officials tampered with the ballots at the recount; rather, it serves to prove that the allegedly suspicious decline in votes existed *prior* to the recount and therefore was not caused by irregularities in the recount process.

**{¶ 29}** What relators have *not* alleged is that the vote totals changed between the initial canvas and the recount, either by a dramatic increase in the number of votes for Balderson or a dramatic decrease in the number of votes for

---

[5] Of course, an overall increase in the number of registered voters is not illuminating. The relevant figure would be the number of newly registered *Republican* voters.

Leneghan. Implicit in the amended complaint is an assumption that an honest comparison of the two vote totals was impossible due to the Muskingum Board's alleged fraud in producing a computer-tally sheet behind closed doors before the official recount and then trying to pass it off as the recount results. But according to the amended complaint, the Muskingum Board conducted a public manual recount. Any remarkable change in the vote totals from what was reported immediately after the primary election would have been patently obvious to Murdock and to Leneghan's other observers. Yet relators allege no such deviation.

{¶ 30} Relators' allegations demonstrate that the anomalies of which they complain existed before Leneghan requested a recount. Relators have not made a single allegation that the premature opening of ballots or the production of a misdated or incorrectly described tally sheet affected any votes. Instead, their entire theory of causation is that these technical violations cast such a cloud of doubt upon the results that the remedy must be to discard *all* the ballots from these 16 precincts, after which Leneghan should be declared the winner of the primary election. But not every violation of R.C. Title 35 constitutes "fraud" that warrants changing the results of an election. *In re Election of November 6, 1990*, 58 Ohio St.3d at 106, 569 N.E.2d 447.

{¶ 31} Relators' alternative claims for relief fail for similar reasons. A writ of mandamus will issue to compel the secretary of state to perform his duty under R.C. 3501.05(N) to investigate election irregularities when his refusal to do so constitutes an abuse of discretion. *State ex rel. Squire v. Taft*, 69 Ohio St.3d 365, 368, 632 N.E.2d 883 (1994). Relators do not allege that Husted has refused to conduct an investigation, and in any event, it would not be an abuse of discretion to decline to investigate conduct that, while technically improper, had no substantive impact on the election outcome or the integrity of the results. And if relators are not entitled to a writ of mandamus, then they cannot recover ancillary damages.

**{¶ 32}** Because relators have not alleged facts sufficient to establish causation—an essential element of undoing the election results—we are compelled to dismiss the amended complaint for failure to state a claim *unless* relators' pending motion for leave to file a second amended complaint would cure the deficiency.

*The motion for leave to file a second amended complaint*

**{¶ 33}** Relators' second amended complaint, which they seek leave to file, does not cure the defects in the amended complaint. Relators' stated purpose in again amending the complaint include to cure the typographical errors discussed above, to add some additional statutory authority for their claims, to seek an additional form of relief against Husted (compelling him to issue a certificate of nomination to Leneghan), and to identify another supposedly wrongful act on the part of the Muskingum Board (conducting an audit on the optical scanner the day before the recount). The proposed second amended complaint does not contain any new factual allegations to show that the alleged irregularities affected any votes, much less enough votes to change or make uncertain the result of the election.

**{¶ 34}** We deny the motion for leave to amend.

*The remaining motions*

**{¶ 35}** Eight motions remain for consideration: (1) Balderson's motion to intervene, (2) relators' motion to strike portions of Husted's answer, (3) relators' motion to strike portions of the Franklin Board's answer, (4) relators' omnibus motion to strike, reclassify, and dismiss portions of the Muskingum Board's answer and motion for judgment on the pleadings, (5) relators' motion for leave to file an amended memorandum in opposition to the motion to intervene, (6) relators' motion to expedite, (7) relators' motion for injunctive relief, and (8) Balderson's motion for leave to file a memorandum in opposition to the motion for an injunction. We deny all eight motions as moot.

{¶ 36} Based on the foregoing, we deny all motions and dismiss the amended complaint.

Motions denied
and cause dismissed.

O'CONNOR, C.J., FRENCH, FISCHER, and DEGENARO, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

O'DONNELL, J., dissents, with an opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 37} Respectfully, I dissent from the analysis in the majority opinion and its decision to dismiss the amended complaint for failure to state a claim. Rather, based on allegations presented by relators, Melanie Leneghan and Kay Clymer, in their amended complaint—that if the ballots in the 16 Muskingum County precincts were not counted, Leneghan would win the primary—they assert claims for writs of mandamus. But relators have failed to establish the necessary elements to obtain even one writ of mandamus, and therefore, I would deny the writs rather than dismissing the amended complaint.

{¶ 38} "To be eligible for a writ of mandamus, relators must 'establish a clear legal right to the requested relief, a clear legal duty on the part of the board and its members to provide it, and the lack of an adequate remedy in the ordinary course of the law.' " *State ex rel. Sensible Norwood v. Hamilton Cty. Bd. of Elections*, 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, ¶ 21, quoting *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

{¶ 39} Here, relators assert requests for writs of mandamus to compel: (1) the Muskingum County Board of Elections to "set aside and not count the ballots from the 16 precincts * * * and amend the results required following the official recount by counting only those votes from the remaining precincts and certifying the results," (2) the Secretary of State, Jon Husted, to ensure the Muskingum

County Board of Elections complies with the recount procedures as specified by relators and "to investigate the violations and irregularities that occurred in Muskingum County during the May 8, 2018 Primary," and (3) the Franklin County Board of Elections "to amend the official results * * * after receiving the new certified results" from the Muskingum County Board of Elections. Relators alternatively request that this court order a new election in Muskingum County for the Republican Party nomination for the 12th Congressional District for the full term and to order the Muskingum County Board of Elections "to reimburse Relator Leneghan the hundreds of thousands of dollars she spent on the primary election" and to issue damages and order reimbursement of recount fees paid and reasonable attorney fees.

{¶ 40} In this case, relators failed to establish a clear legal right to have the ballots in 16 Muskingum County precincts "set aside and not count[ed]," and to have the Muskingum County Board of Elections certify new results to the Franklin County Board of Elections and to the secretary of state. Nor have relators established a clear legal duty on the part of the Muskingum County Board of Elections to set aside and not count ballots from 16 precincts based on an irregularity in prematurely opening those ballot boxes or to amend the election results by counting only those votes from the remaining precincts and certify those results because there is no statutory obligation to do so.

{¶ 41} Therefore, relators have failed to establish the requisite elements for the issuance of writs of mandamus.

{¶ 42} This court has considered the proper adjudication of other requests for writs when relators have failed to establish the elements necessary to obtain a writ. In *Sensible Norwood*, for example, the relators there "failed to establish a clear legal right to their requested relief and a clear legal duty on the part of the board to provide it," and as a result this court denied the requested writ of mandamus. 148 Ohio St.3d 176, 2016-Ohio-5919, 69 N.E.3d 696, at ¶ 22. Based

16

on relators' failure to establish a clear legal right to relief and a clear legal duty on the part of respondents to provide that relief in this case, I would deny the request for writs of mandamus and deny all remaining motions as moot.

_____

Peggy S. Guzzo, for relators.

Michael DeWine, Attorney General, and Halli Brownfield Watson, Renata Y. Staff, and Sarah E. Pierce, Assistant Attorneys General, for respondent Ohio Secretary of State Jon Husted.

Isaac, Wiles, Burholder & Teetor, L.L.C., Mark H. Troutman, and Shawn K. Judge, for respondent Muskingum County Board of Elections.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Timothy A. Lecklider, Assistant Prosecuting Attorney, for respondent Franklin County Board of Elections.

Baker & Hostetler, L.L.P., Patrick T. Lewis, and Erika Dackin Prouty, for proposed intervening respondent, Troy Balderson.

_____