**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LOUISE M. ROSELLE; PAUL M. DE
MARCO; JEAN GEOPPINGER MCCOY,

    Objector - Appellants,

v.

BERGER & MONTAGUE, P.C.,

    Respondent - Appellee.

No. 17-1328
(D.C. No. 1:90-CV-00181-JLK)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Three attorney-employees of the now-defunct law firm Waite, Schneider,

Bayless & Chesley ("WSBC") seek personal compensation for legal services they

rendered during the twenty-seven-year class action litigation in *Cook v. Rockwell

Int'l Corp.*, No. 1:90-cv-00181-JLK (D. Colo.). Louise Roselle, Paul De Marco, and

Jean Geoppinger McCoy ("the WSBC Attorneys") objected to Lead Class Counsel's

allocation of the common fund attorneys' fee award because, among other things,

they believed they should have received "personal bonuses" separate and apart from

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
10th Circuit Rule 32.1.

the fees allocated for their hourly work to WSBC. The district court overruled the WSBC Attorneys' objections and approved the fee allocation. The WSBC Attorneys now ask this court to reverse that approval and to remand with instructions to grant them a portion of the common fund consistent with their contribution. Because we conclude that the WSBC Attorneys lack standing to challenge the fee allocation, we DISMISS their appeal and VACATE the portions of the district court's orders addressing their objections.

## I.     BACKGROUND

Louise Roselle, Paul De Marco, and Jean Geoppinger McCoy were each long time attorney-employees of WSBC, and each significantly contributed to the *Cook* litigation. Both Ms. Roselle and Mr. De Marco worked on *Cook* from its inception in 1990, with Ms. Roselle serving as co-lead trial counsel. Ms. Geoppinger McCoy started working with the litigation team after joining WSBC in 1998. Before the *Cook* litigation was resolved, all three attorneys left WSBC due to misconduct by WSBC's principal, in an unrelated case, that resulted in the principal's disbarment and the firm's demise.

Pursuant to Ohio law, Eric W. Goering took control of WSBC under a "Deed of Assignment for the Benefit of Creditors." That statutory process was "similar to a bankruptcy liquidation and provide[d] for the appraisal and liquidation of assets for distribution to creditors." Appellee's Suppl. App., Vol 1 at 194. Mr. Goering filed an

2

inventory of WSBC's assets that listed the fees payable to WSBC from the *Cook* litigation.[1]

Ms. Roselle and Mr. De Marco continued to work on the *Cook* litigation at their new firm, Markovits, Stock & DeMarco, LLC ("MSD"), until a settlement was reached in 2016. The WSBC Attorneys then assisted Mr. Goering, the assignee of WSBC's interests, in preparing a fee application that Mr. Goering submitted to Lead Class Counsel. That fee application sought compensation for all the hours billed by the WSBC Attorneys while they were employed by WSBC, but did not include any request for performance bonuses to any of the individual attorneys.

At a subsequent fairness hearing, the district court "point[ed] out" that it would order any attorneys' fees attributable to work done by WSBC "paid to the receiver of that law firm" and that it was "up to anyone that wants [those funds] to go make their claim there." Appellants' App., Vol. 6 at 1433-34. Despite the district court's direction, the WSBC Attorneys did not make a claim with WSBC's receiver. The district court then approved the *Cook* settlement and awarded $150,000,000 in

---

[1] The Ohio Supreme Court has since nullified Mr. Goering's appointment, *see State ex rel. McGirr v. Winkler*, 93 N.E.3d 928, 929-30 (Ohio 2017), and a federal district court appointed John Pidcock to serve as WSBC's receiver. *See* Opinion and Order Appointing Receiver and Setting Terms of Receivership, at 1, *McGirr v. Rehme*, No. 1:16-cv-00464 (S.D. Ohio Aug. 3, 2018), ECF No. 193. Mr. Pidcock had the authority to "collect all profits, income," "including all future income," "and revenue due to WSBC." *Id.* at 2-3. The district court has since entered judgment in *McGirr* and vacated the order appointing Mr. Pidcock as WSBC's receiver, directing that all funds owed WSBC, including those from the *Cook* litigation, be paid to an escrow agent. Agreed Judgment Entry and Permanent Injunction, at 2-4, *McGirr v. Rehme*, No. 1:16-cv-00464 (S.D. Ohio Oct. 3, 2018), ECF No. 197 (referring to the *Cook* litigation as the "Rocky Flats case").

attorneys' fees. The district court ordered "Lead Counsel for the Class, Berger & Montague" to allocate and distribute the common fund fee award "among the various Class Counsel . . . in such manner as Lead Counsel believe[d] reflect[ed] each counsel's contribution to . . . this litigation." *Id.* at 1389-90. It also ordered that "any disputes that [could ]not be resolved by agreement . . . be brought within 90 days." *Id.* at 1389-90.

Lead Counsel allocated the common fund fee among the various class counsel, awarding WSBC $6.47 million. The WSBC receiver did not object to the amount of fees allocated to WSBC by Lead Class Counsel, and the WSBC Attorneys conceded they "have no standing to advocate on behalf of their former employer." Appellants' Reply Br. at 4. Instead Ms. Roselle, later joined by Ms. Geoppinger McCoy, Mr. De Marco, and MSD, objected to Lead Class Counsel's fee-award allocation on their own behalf. Among other perceived failings, they objected to Lead Class Counsel's "lack of transparency" in the allocation process, its application of a "1.6 multiplier" to WSBC's portion of the award instead of "the 2.41 multiplier that all class counsel asked for in their fee application," its "refusal to allocate any portion" of the fee award to the WSBC Attorneys "for [their] contributions to th[e *Cook*] case while at WSBC," and its "disproportionately low allocation" to the WSBC Attorneys' new firm, MSD. *See* Appellants' App., Vol. 6 at 1441-42; Appellants' Br. at 25-26. In response to Ms. Roselle's objections, the district court stayed distribution of the fees and called for the parties' views as "to the question of whether a Special Master should be appointed to resolve the fee distribution issues." Appellants' App., Vol. 6

4

at 1473. After the parties' responses, the district court determined that no special master should be appointed because the objections "raise[d] straightforward legal issues, not factual disputes." *Id.* at 1553. It then, without explanation, "overrule[d] all objections raised" by Ms. Roselle, except as to the amount of the fees to be allocated to MSD.[2] *Id.*

The WSBC Attorneys then filed this appeal, arguing that the district court abused its discretion by approving Lead Class Counsel's fee award allocation. But before we can reach the merits of their claim, we must first determine whether we have jurisdiction to hear this appeal.

## II.    DISCUSSION

"Article III of the Constitution limits federal judicial power to 'Cases' and 'Controversies.' A party that cannot present a case or controversy within the meaning of Article III does not have standing to sue in federal court." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) (en banc) (*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)). Standing goes to this court's jurisdiction; thus, whenever a party's "standing is unclear, we must consider it *sua sponte* to ensure there is an Article III case or controversy before us." *Id.* To have standing, a party must have suffered an injury—"an invasion of a legally protected interest"— that is caused "by the conduct complained of" and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If at any

---

[2] The dispute over the fee allocation to MSD has since been resolved, and that portion of the allocation was not appealed to this court.

point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, . . . the federal court must dismiss the case for lack of subject matter jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)). Because the WSBC Attorneys cannot satisfy any of *Lujan's* three elements, we must dismiss their appeal.

### A. Injury

To establish an injury sufficient for Article III standing, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The WSBC Attorneys argue they have been injured because they were not allocated personal bonuses separate and apart from the fees allocated to WSBC for their hourly work. Although pecuniary injury of that kind usually satisfies the injury requirement of standing, *see Hobby Lobby*, 723 F.3d at 1126 (concluding that the "imminent loss of money" constituted an Article III injury), such is not the case here because the WSBC Attorneys do not have a "legally protected interest" in any portion of the common fund, *see Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

The WSBC Attorneys acknowledge that at all times during the *Cook* litigation "they were employees, not partners" or other equity-shareholders in WSBC. Appellants' Br. at 8 n.3. As salaried employees of the firm, the WSBC Attorneys

6

worked on behalf of WSBC and, barring any arrangement to the contrary, all proceeds corresponding to their work on the *Cook* litigation belong to the firm. Yet, the WSBC Attorneys have not asserted that they entered into a contract or agreement with the firm that granted them any legal interest in WSBC's share of the common fund. Thus, even assuming a deficiency in Lead Class Counsel's fee allocation, any injury is to WSBC, not to its employees. And because the WSBC Attorneys "cannot bring suit to vindicate the rights of others," *Ramos*, 695 F.3d at 1046 (quotation marks omitted), they do not have a legally protected right for purposes of standing.

The WSBC Attorneys make two arguments to support the claim that they have a legal interest in the common fund, independent of WSBC. First, the district court's order directed Berger to "allocate and distribute . . . attorney[s'] fees among the various *Class Counsel*," and the WSBC Attorneys contend they are "indisputably include[d]" in "class counsel." *See* Appellants' Reply Br. at 5-6 (emphasis added) (quoting Appellants' App., Vol. 6 at 1389). We are not convinced.

The WSBC Attorneys' argument depends on a tenuous reading of the district court's order. Contrary to the WSBC Attorneys' position, the district court did not order that the fee award be allocated and distributed to individual attorneys rather than to their law-firm employers. The better reading of the order instructs Lead Class Counsel to allocate the fee award among the various law firms that appeared on behalf of the class, leaving the ultimate decision of how fees will be disbursed within the firms to each firm. *See In re Burlington N., Inc. Emp't Practices Litig.*, 810 F.2d 601, 609 (7th Cir. 1986) ("[W]e therefore reverse this portion of the district court's

7

order and direct that the [fee] award be paid to the respective law firms, not the individual attorneys and paralegals.").

Second, the WSBC Attorneys argue that Lead Class Counsel undervalued their contribution to the litigation when it applied a 1.6 multiplier instead of a 2.41 multiplier to determine WSBC's portion of the common fund. Because WSBC did not object to the alleged deficiency, the WSBC Attorneys claim they are entitled to the difference between what was actually allocated to WSBC and what should have been allocated to WSBC. Specifically, they contend the difference between the award to WSBC and what would have been awarded upon application of a 2.41 multiplier corresponds to *their* individual contribution to the *Cook* litigation. Thus, the WSBC Attorneys argue that "they [are seeking] a portion of the $150 million fee award *apart from* the share allocated to WSBC," a portion to which they claim a legally protected interest. Appellants' Reply Br. at 1. Their argument is unavailing.

WSBC's failure to object to what the WSBC Attorneys now see as a deficient allocation did not transfer WSBC's legal interest to its employees. Instead, it waived any objection to the award on behalf of the firm and any of its employees. As we have explained, any portion of the common fund that corresponds to the work performed by the WSBC employees belongs to WSBC; that includes any "bonuses" or multipliers generated by the WSBC Attorneys' particular contributions to the litigation.

The WSBC Attorneys do not have a legally protected interest in the common fund fee award and thus could not have been injured by the common fund allocation.

8

### B. Causation

The causation element of standing is satisfied when an "injury . . . [is] fairly traceable to the challenged action." *Lujan*, 504 U.S. at 560 (alterations omitted) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)). The WSBC Attorneys challenge the allocation of the fee award and imply that if Lead Class Counsel had followed the district court's order to "make allocations based on 'each counsel's contribution to the prosecution of [the *Cook*] litigation,'" they would have suffered no injury. *See* Appellants' Reply Br. at 10 (quoting Appellants' App., Vol. 6 at 1389-90). But this further evinces a misunderstanding of the employer-employee relationship between WSBC and its attorneys.

The WSBC Attorneys rely on *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th Cir. 1994). There, the district court denied "Class Counsel's request for [firm wide] multipliers but enhanced the awards to eleven individual attorneys for the exceptional quality of their representation." *Id.* at 1295. The WSBC Attorneys argue that they should likewise receive enhanced awards for their significant contributions, but they read *Washington Public Power* too broadly. The individually enhanced awards there were not paid to the attorneys directly but merely increased the portion of the common fund that was paid to their firm. The WSBC Attorneys are correct that nothing in *Washington Public Power* requires that those individual enhancements be paid to the law firm, but neither is there anything in the opinion that counsels setting aside the traditional employer-employee relationship when allocating those enhancements. There is no indication

that the issue was raised in *Washington Public Power*, and the court there awarded the fees, including the enhancement based on individual attorney performance, to the firm.

Here, even if the district court had applied individual multipliers to the WSBC Attorneys' hours, as in *Washington Public Power*, the increased fee allotment would not have been paid to the WSBC Attorneys directly but instead to their employer, WSBC. Because the WSBC Attorneys' alleged injury cannot be fairly traced to Lead Class Counsel's failure to follow the district court's order, the WSBC Attorneys have failed to show the causation necessary to support standing.

### C. Redressability

An injury is redressable when it is "'likely,' as opposed to merely 'speculative,' that [it] will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). The WSBC Attorneys cannot meet the redressability requirement here. Even if we ordered the district court to increase the allotment due WSBC, it is "speculative at best" that the WSBC Attorneys would personally receive any of that allotment. *See Simon*, 426 U.S. at 43. This is because any increased fees must be paid to WSBC, who retains discretion to pay any additional bonus to the WSBC Attorneys.

This conclusion is supported by *Simon*. There, the Supreme Court determined that the redressability of the alleged injury to indigent patients was speculative because it was "just as plausible that the hospitals to which [the patients] may apply for service would elect to forgo favorable tax treatment to avoid the undetermined

10

financial drain of an increase in the level of uncompensated services." 426 U.S. at 43. Similarly, if WSBC were to receive a larger allotment of the common fund, it is unlikely that WSBC would pay any of that increase to its former employees because, as the WSBC Attorneys admit, they have no claim to the fees awarded to the law firm. And where the WSBC Attorneys have failed to file a claim in the receivership, it is not surprising that the receiver did not award them any portion of the fees paid to WSBC. Because it is no more than speculative that any action by this court could redress the WSBC Attorneys' claimed injury, they have failed to show their claim is redressable in this action.

In summary, the WSBC Attorneys have not demonstrated that their legally protected interests were injured, that the allocation of the common fund caused the injury they allege, or that this court could redress any such injury. Accordingly, the WSBC Attorneys lack standing.

### III. CONCLUSION

We therefore DISMISS this appeal and VACATE the portions of the district court's orders that address the WSBC Attorneys' objections.[3]

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[3] Berger & Montague's two pending motions—one seeking leave to file a sur-reply brief and the other seeking sanctions on the WSBC Attorneys under one or more of Rule 38 of the Federal Rules of Appellate Procedure, 28 U.S.C. §§ 1912 and 1927, or the court's inherent power—are DENIED.